Nott, J.,
delivered the opinion of the court:
This is the third time that the qua/ntum of the damages in this case has been under consideration. But the counsel for the claimant has pressed the cause of his client with such earnestness and good faith that the court deems it proper now to declare the reasons for which it must adhere to its former conclusion.
The suit is to recover for the use and occupation of certain vacant lots in the city of Louisville from April 1,1863, to May 1, 1866. The use and.occupation consisted in the Commissary Department erecting on the premises a large storehouse.' The case has been once remanded to enable the claimant to produce further evidence on the question of value, but no instance has been shown of the actual rental of such property. A number of witnesses have indeed testified that in their judgment $400 a year or $500 a year would be a fair rent; and if their judgment was based upon knowledge, it would be entitled to *13 great consideration; yet, inasmuch as it does not appear tobe based on the transactions of men, we must regard it as nothing better than the opinion of witnesses. The failure to show actual transactions of this character leads to the conclusion that in Louisville, as in other parts of the world, a temporary lease of unimproved city property is not a marketable commodity ; that such property really has little or no rental value.
The claimant has sought to supply this needed evidence by proving the value of the fee simple in 1863, in 1864, in 1865, and in 1866, and has asked the court to allow 7 per cent, on the average of these estimates, which would result in $181.96, $336, $434, $170.87, equal to $1,122.83 for the entire term.
This court decided at a very early day, in Johnson's Cae (2 C. Cls. R., 391), that “the rule for the measure of damages for the temporary occupation of land by the Government is the value of such temporary occupancy at the time of entry, as though the claimant had leased and the Government had rented the premises.” And the rule has been steadily adhered to (4 C. Cls. R., 248 ; 8 id., 243). The relations of landlord and tenant become fixed at the time of entry; and where the holding continues and becomes a tenancy from year to year neither party is subject to the fluctuations of real estate in the market. If the Government is the tenant the accounting officers can not inquire annually what the land is worth; neither can the owner augment the current rent because the property will sell for more than when the Government entered upon it. Bent once fixed continues until it be changed by agreement. If the occupancy of the Government be unreasonably continued, or changed conditions render the rent unreasonably small, the landlord must procure an express agreement, or take measures to bring the occupancy, or the implied lease, to an end. So long as he does nothing, he assents to a rental based on the value of the occupancy at the time of entry.
It is true that in this case the claimant has testified that the occupancy began without his consent and against his wishes. But the damages which may be recovered in an action of trespass do not belong here. The Government is never a trespasser; its entry is always lawful. If the acts of its officers were tortious, the owner’s remedy is against them. He may not assent to the entry in form, and it may be in fact against his wishes, but if he afterwards brings an action for use and *14 occupation be thereby acknowledges that he did consent. Every person who acquires property in this country, real or personal, in effect subscribes to an agreement to hold it subject to the right of the Government to take it for public use on the payment of just compensation. All property is held on this condition, whether it be the most tangible known to the law, real property, or the most intangible, the patented mind work of the inventor. There is no action of trespass against the Government for the one, nor of infringement for the other. The damages must be estimated as if the owner expressly consented to the occupancy or taking for reasonable compensation, but neglected to fix the amount.
We come now to the value of the present occupancy, to the implied rent which the Government should have paid for these vacant lots in the city of Louisville. As has been said, the leasing of other vacant lots has not been shown. The owner did indeed lease these immediately after the Government vacated them, for a corresponding period of three years, at $500 a year; but he leased them when the value of the realty had risen from $3,000 to $7,800, and he leased them to the parties who had purchased the commissary storehouse which stood upon them. The building was worth nothing without land for it to stand upon, and while it stood upon these lots and the tenants controlled it, the lots were not, so far as those tenants were concerned, unimproved property. At the end of three years their occupancy ceased, the building was destroyed or removed, the property reverted to its former condition of unimproved, and from that time to this has never been leased. We must therefore reject this leasing as a criterion of value, and restrict our inquiry to what was the value of the property in its unoccupied, unimproved condition, in the spring of 1863.
It is a matter of common knowledge that in every American city large quantities of unimproved land, commonly called vacant lots, are held as investments, which yield neither rents nor profits. It is also a matter of common knowledge that when such property is partially improved by a barn, or shed, or small tenement, the -owner is glad to lease it for 2 or 3 per cent., while he continues to hold it for speculative purposes. In the present case it appears by the testimony of the claimant that these lots were bought and held for speculative purposes, and that the holding of the Government worked no *15 injury to the owner, for during this occupancy their value rose from $3,600 to $7,800, and when it ceased he was for a while enabled to receive for them $500 a year. The court, therefore, has taken the value which the claimant’s witnesses agree in placing upon the property in 1863, viz, $3,600, and has allowed 2¿ per cent, on that valuation as the annual rental for each of the three years, viz, $90, giving for the period of occupancy $278. On the former hearing, the court, by another process, found $300 to. be the value of the occupancy. The difference is not material; and the order of the court is that the findings which were filed March 19, 1888, be reported to Congress.