Whaley, Chief Justice,
delivered the opinion of the court:
The plaintiffs sue to recover just compensation for an alleged taking, under the power of eminent domain, of a tract of land lying between the Atlantic Ocean, to the south, and Moriches Bay, to the north, off the southern shore of Long Island, State of New York.
This tract is located on Great South Beach, otherwise known as Fire Island. Its area is approximately 38 acres with a frontage of 1,900 feet on the Atlantic Ocean, approximately the same on Moriches Bay, and an average depth between ocean and bay of 750 feet.
Great South Beach, together with Westhampton Beach, which are separated by Moriches Inlet, form a sand barrier reef protecting the mainland of Long Island. The reef inclosed Moriches Bay, which is relatively shallow.
The taking asserted arose from the fact that in the forepart of December 1941, the Army Air Service, as the findings recite, “established an aerial gunnery target range on Great South Beach in the immediate vicinity of the Atwater property, and in connection with such target range the defendant began to use the plaintiffs’ property without notice and without requesting permission.”
The targets were temporary affairs, being paper disks supported on wooden frames, replaceable when fresh targets were desired. Eight of them were strung in a line on Great South Beach, but they did not extend over and on to plaintiffs’ property. However, a safety zone was necessary and *206 about half of the Atwater property was included in this zone. This manifestly made the Atwater property uninhabitable, assuming that it was habitable at all. The United States Coast Guard established a military patrol excluding all persons from the safety zone, and under these circumstances the plaintiffs were effectively barred from the enjoyment of their property.
But this exclusion was for the time being only. It began in December of 1941, when military patrol began, and it ceased about June 30, 1944, when military patrol was succeeded by the customary lifesaving patrol.
- This period of exclusion began without formal notice and ended without formal notice.
The taking, however, was not that of actual physical occupancy by .agents of the defendant, except for patrol. And neither the plaintiffs themselves, nor anyone representing them, physically occupied the premises at the time of taking. The property in fact was wholly unimproved and produced no revenue.
It is not asserted by the plaintiffs that the conduct of the defendant’s officials was tortious; that they acted without authority. Nor is there any contention that the use for which the taking was directed was not a public use.
The United States may exercise the right of eminent domain upon an estate less than the fee simple. It may requisition the tenancy of a lessee, United States v. General Motors, 323 U. S. 373, that is to say, an interest already determined and set apart by indenture. The United States may also create, by the act of taking, a leasehold that did not exist before, with itself asi lessee, Johnson v. United States, 2 C. Cls. 391, 8 id., 243. In the case of Johnson v. United States, a military officer, acting in his capacity as such and under military necessity, had entered and occupied a tract of land. There was nothing to show that the Government had contemplated anything but a temporary occupancy, in fact the Government later withdrew from the premises. For the purpose of fixing upon the amount of just compensation for the taking, which this Court conceived it to be, the Court considered the occupation as *207 though the owner “had leased and the Government had rented the premises, regard being had to the nature of the occupancy and to the fact that the Government had the option of discontinuing the implied tenancy on any day or of retaining it indefinitely” (2 C. Cls. 391,416).
There is every indication in the instant case that, although the tenancy was to be indefinite in duration, it never was, nor was intended to be, anything but temporary in nature.
We cannot accept the argument that the tenancy has never been terminated. The reason given is, in substance, that no notice of termination has been, served converting the relationship between the parties from privity of estate to that of strangers. The same reasoning might be applied to the inception of the tenancy — that privity of estate never was created because there was no notice. If that were the situation at the beginning then in place of tenancy there would be a tort and the plaintiffs here would be without right of action.
The nature of the tenancy did not vary throughout its existence. It was effected by a military patrol, publicly maintained, for all to see and all to know, and as -to the duration of that patrol the plaintiffs, who were specially interested, may not disclaim knowledge of that which was open and known to others, that is, to the public.
The taking in this case was, in its major aspect, evidenced by one thing, the military patrol that would have prevented the owners from entering their land, had they so desired, although, in so far as any actual prevention is concerned, the record indicates no definite intention of the plaintiffs, or anyone acting for or under them, to enter or use the premises during the period of exclusion, had there been no act of exclusion.
The land was not damaged; it was merely part of a safety zone. But just compensation is not to be denied the plaintiffs, for there was an actual taking and intent to take, although it took the form only of extinguishing, for the time being, the right of ingress.
There being no expressed intention, the intention must be inferred from the circumstances. The military authori *208 ties required an aerial target range. Its location was selected, the targets placed-, and the range was used for the purpose of training in aerial gunnery. The range and its vicinity was guarded against intrusion for manifest reasons. When the range had served its purpose,- it was. abandoned, the military patrol removed and the public along with the plaintiffs reinvested with the right of occupancy.
This was not a case of exclusion from the land under actual combat conditions. ■ Martial law had not been imposed. The situation bore a close analogy to the taking of land for a military training camp. Instead of a camp, there is here a target range for training purposes. There is no essential difference. And it can hardly be argued that land taken temporarily for military training purposes, whether a camp or target range, is not a taking compensable under the Fifth Amendment.
As was said by this Court in Causby, et al., v. United States, 104 C. Cls. 342, with reference to just compensation for a taking under the Fifth Amendment:
This provision has the same, validity in time of war as in time of peace. The constitution is not set aside in time of war.
The cases of. Peabody v. United States, 231 U. S. 530, and Portsmouth Harbor Land & Hotel Co. v. United States, 64 C. Cls. 572, lack the element of physical exclusion from access to the land, and are not in point.
There is left the question of the amount of just compensation to which the plaintiffs are entitled. The property was relatively inaccessible. The plaintiffs place the substantial value of $85,500 on their property with a rental value of $2,500 per annum. The rental value is what we are concerned with here. This property produced no income to the plaintiffs. It is unimproved, but it is under taxation, an expense rather than a source of profit. The commissioner, who had the case under reference and reported upon the evidence, found fair and reasonable compensation was in the sum of $475.00 as of December 15, 1941, based upon a possible use of the property for duck hunting, the only basis for .any rental value.
*209 After a careful examination of all the evidence and taking all the circumstances into consideration, we are of the opinion that the amount found by the commissioner is the value of the property for the period of its use by the defendant.
The plaintiffs are therefore entitled to recover as compensation, as of December 15, 1941, the sum of $475.00, and, in order to make this just, there will be added four percent thereof per annum from December 15, 1941, down to the date of payment.
Judgment will be entered accordingly, and it is so ordered.
JONES, Judge; Whitaker, Judge; and Littleton, Judge, concur.
Madden, Judge, took no part in the decision of this case.