No. 80-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IVAN HOWARD,

Plaintiff and Respondent,

vs.

STATE OF MONTANA,
Department of Military Affairs,

Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
In and for the County of Broadwater
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Denny Moreen argued and Daniel J. Hoven argued, Assistant
Attorneys General, Helena, Montana

For Respondent:

Patrick F. Hooks and Tom Budewitz argued, Townsend,
Montana

---

Submitted: March 2, 1982

Decided: JUN 24 1982

Filed: JUN 24 1982

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal results from an action by a developer, Ivan Howard, against the State Department of Military Affairs (hereinafter the State) for inverse condemnation. Following a jury verdict for the State in the First Judicial District, Broadwater County, the trial court granted Howard's motion for a new trial. The State appeals.

This dispute involves 183 acres in the Limestone Hills area southwest of Townsend, Montana. The land was owned by sheep ranchers, the Toma family, from the 1920s until 1978. In 1978 Robert Bateman and Ivan Howard purchased the land, made up of eleven patented mining claims, for $200 an acre. Before completing the sale, Howard and Bateman visited the property three times and ordered a title commitment from Surety Title Company of Helena.

From 1958 until 1971, the National Guard conducted two- to four-week annual training sessions in the Limestone Hills area, which involved the use of artillery shells and other weapons. From 1971 to the present, the same land has been used for weekend training from spring until fall of each year. Throughout this time, the National Guard has operated with a special use permit from the Bureau of Land Management and the State of Montana, which own the land surrounding the mining claims. The current permit will expire in 1983.

Bateman and Howard were unaware of the National Guard's presence. Neither the Tomas nor the title commitment mentioned the problem. The National Guard's presence was common knowledge in the Townsend area, but Howard and Bateman did not discuss the sale with local realtors or

other citizens.

The Toma-Howard contract was consummated on March 27, 1978. Howard planned to subdivide the 183 acres into recreational homesite areas and sell it for $500 an acre. In early May, Howard put a general ad for recreational land in the Independent Record and received nineteen responses. On May 6, Howard planned to meet prospective buyers at the "homesites" but was stopped by roadblocks erected by the National Guard. This was when Howard first became aware of the National Guard's presence. Subsequently, Howard sold one lot for $500 an acre to a buyer who liked to watch howitzers. Howard abandoned any further attempts to sell the property, however, and filed suit against the State for inverse condemnation.

The jury found in favor of the State. Howard filed a motion for a new trial, which was granted. The State appeals.

The first issue raised on appeal is whether the District Court erred in defining "taking" as "actual interference with use of the property."

Jury Instruction No. 13, proposed by Howard and adopted by the trial court, defines "taking" as "actual interference with the use of the property." The State's proposed definition of "taking," which the court refused, is "actual interference with or disturbance of property rights." In view of our holding herein that Howard purchased the land after its inverse condemnation, the distinction is not crucial to this case.

Using Howard's theory of inverse condemnation, the "interference with use" occurred in 1978, as the military manuevers did not interfere with the land until it was developed in 1978. Thus, the damages awarded, if any, would

be determined by the 1978 property value. Further, the State's affirmative defenses of prescriptive easement, laches, and statute of limitations would be inapplicable.

In contrast, under the State's theory, a "taking" would occur whenever there was actual interference with property rights. Thus, the "taking," if any, occurred when the military manuevers began in 1958. The manuevers, even if the land was unused, interfered with the right to use the property. Consequently, the damage, if any, would be determined by the 1958 property values and the State's affirmative defenses could be given. We hold for the State.

Howard relies on Thornburg v. Port of Portland (1962), 233 Or. 178, 376 P.2d 100, to support his "use" theory. Thornburg was a landowner near the Portland airport who sued for extreme noise. But, Thornburg is easily distinguished. The Oregon Constitution provides that "[p]rivate property shall not be taken for public use . . . without just compensation. . ." Art. I, Sec. 18, Oregon Constitution. The Montana Constitution, in contrast, provides that "[p]rivate property shall not be taken or damaged for public use without just compensation. . ." (Emphasis added.) Art. II, Sec. 29, 1972 Mont. Const.; cf. Rauser v. Toston Irrigation District (1977), 172 Mont. 530, 565 P.2d 632. The more restrictive Oregon Constitution required the court to adopt a nuisance theory in order to compensate Thornburg. To do this, the Oregon court discusses actual interference with the use of property and ignores the trespass requirement.

Thornburg also involved a changing interference with property rights. The original propeller planes were not nearly as noisy as the jets that motivated Thornburg's suit.

-4-

The instant case is similar to Atwater v. United States (1946), 106 Ct. Cl. 196, where the plaintiff's land was used from 1941-1944 as a safety zone for an adjoining gunnery range. Plaintiff had never used, occupied or rented the land and received no income from the property although it was used occasionally for hunting ducks. The court found that the use of the land as the safety zone, which was patrolled, constituted a taking. The "taking" was the interference with the right to use the property, not the actual use. See also: State ex rel. Symms v. Nelson Sand and Gravel, Inc. (1970), 93 Ida. 574, 468 P.2d 306, 311; Lincoln Loan Company v. State Highway Commission (1976), 274 Or. 49, 545 P.2d 105, 108.

Atwater parallels the instant case. The mining claims, although used only for grazing until 1978, were first "taken" (if ever taken) for military use in 1958, when the National Guard first interfered with the owner's right to use the land. It follows that if the "taking" occurred in 1958, the trial court should have given instructions on prescriptive easements, statutes of limitations and laches.

The case is controlled by the fact that Howard purchased this land after inverse condemnation occurred. He was, therefore, precluded from claiming damages for inverse condemnation. Knight v. City of Billings (1982), ____ Mont. ____, 642 P.2d 141, 39 St.Rep. 385; Williams v. City of Valdez (Alaska 1981), 624 P.2d 802. It is, therefore, unnecessary for us to consider the issue of whether the court abused its discretion in granting a new trial.

The order of the District Court granting a new trial is reversed and the jury verdict reinstated.

_____
                   Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices