Argued January 9, modified and remanded April 18, 1962

# CEREGHINO ET AL v. STATE HIGHWAY COMMISSION
# HALL ET AL v. STATE HIGHWAY COMMISSION
# TEGART ET UX v. STATE HIGHWAY COMMISSION

370 P. 2d 694

440

*Charles Peterson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and L. I. Lindas, Assistant Attorney General, Salem.

*Carrell F. Bradley,* Hillsboro, argued the cause for respondents. With him on the brief was George W. Mead, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

LUSK, J.

The appeals in these cases were consolidated for hearing in this court because they involve identical questions.

The plaintiffs, owners of agricultural lands in Multnomah county, brought these actions against the state of Oregon, acting by and through its State Highway Commission, to recover damages for injury to their lands caused by the construction by the defendant of a state highway. The Cereghino case was tried by a jury which returned a verdict for the plaintiffs in the sum of $4,250, with interest at the rate of six per cent per annum from January 1, 1956. The Hall and Tegart cases were thereafter tried by the court without a jury under a stipulation that the court could consider the testimony in the Cereghino case in addition to such testimony as the parties might introduce. In these cases the court entered findings of fact and conclusions of law and a judgment in favor of the plaintiffs. The judgment in the Tegart case was for $3,500 and in the Hall case for $5,500, each carrying interest at the rate of six per cent per annum from January 1, 1956.

The defendant has appealed and the plaintiffs have cross-appealed.

The defendant assigns error to the refusal of the court to include in the judgments a provision granting it easements of flow over the lands involved. The testimony has not been brought to this court, but the pleadings and findings of fact and judgments enable us to determine whether the contention is well founded.

Except for the description of the land and the amounts of damages claimed, the complaints are in

substantially identical language and it will suffice for our purposes to set forth the following portions of the amended complaint in the Tegart case:

"II

"That during all of the times herein mentioned, Plaintiffs owned the following described real property, to-wit:

[Description omitted]

"That said land is located immediately north of the Columbia River Highway in the easterly portion of Multnomah County, Oregon, and for many years last past and particularly in the year 1955 the property was highly developed, rich, agricultural land devoted to the use of farming.

"III

"That prior to the fall and winter of 1955 and 1956, the Defendant caused to be constructed a State Highway which lies to the south of Plaintiffs' property; that in and as a result of the construction of said highway, the Defendant caused large quantities of surface water to collect from adjoining areas and properties which lie south and above Plaintiffs' land; that during the winter of 1955-56 through the highway drainage and as a result of its construction, great bodies of water, mud, dirt and silt were cast upon approximately 8.7 acres of Plaintiffs' land, said 8.7 acres being more particularly hereinafter described, to-wit:

[Description omitted]

"IV

"That as a direct and proximate result of the facts hereinabove alleged, large quantities of top soil were washed from the Plaintiffs' said lands hereinabove described and the water cast upon Plaintiffs' said land greatly in excess of that which would normally flow across the same unless the drainage and highway system constructed by the

Highway Commission had been installed and constructed.

## "V

"That as a result of the facts above alleged, the cultivation of the Plaintiffs' land more particularly described in Paragraph III above has been made impossible and the Plaintiffs have been deprived of the full use and enjoyment thereof rendering the land less valuable to the Plaintiffs and the value of the entire tract of real property more particularly described in Paragraph II of Plaintiffs' complaint has been rendered less valuable and the Plaintiffs have been damaged in the sum of $7,500.00."

The defendant in its answer admitted the construction of a state highway, as alleged, but otherwise denied all the allegations of the amended complaint.

■■ These are not tort actions. If they were the judgments would not be sustainable, as the state has not consented to be sued for tort, except in cases not pertinent here. The plaintiffs are seeking to recover compensation for private property taken by the state for a public use. The defendant, it is true, denied the taking, but the verdict, findings, and judgment which are not challenged, except in the one particular above stated, are conclusive of that issue.[1] Article I, Section 18 of the Oregon Constitution provides:

"Private property shall not be taken for public use * * * without just compensation * * *."

Ordinarily, when the state takes private property for a public use and it cannot agree with the owner on

---

[1] When damage is caused by flooding which destroys private property or materially decreases its value, there is a taking within the meaning of the state and federal constitutions. Tomasek v. Oregon Highway Com'n, 196 Or 120, 149, 248 P2d 703, and authorities there cited.

the value of the property, it institutes a condemnation proceeding in which the amount of just compensation is determined and a judgment therefor entered in favor of the property owner. The Oregon State Highway Commission is authorized by statute to bring such proceedings for the purpose of acquiring "real property, or any right or interest therein, including any easement or right of access, deemed necessary for: * * * highway drainage and drainage tunnels." ORS 366.340. But where the state exercises its power of eminent domain without bringing an action to condemn, the owner of the property taken may himself go into court and sue to recover its value and certain damages; for to deny him this right would be to deprive him of the protection guaranteed by Article I, Section 18, of the state constitution. These principles, which are not questioned by any of the parties, are more elaborately stated in *Tomasek v. Oregon Highway Com'n,* supra, note 1. See, also, *Morrison v. Clackamas County,* 141 Or 564, 567, 18 P2d 814. As the court said in *United States v. Lynah,* 188 US 445, 465, 23 S Ct 349, 47 L ed 539:

> "All private property is held subject to the necessities of government. The right of eminent domain underlies all such rights of property. The government may take personal or real property whenever its necessities or the exigencies of the occasion demand. So the contention that the government had a paramount right to appropriate this property may be conceded, but the Constitution in the Fifth Amendment guarantees that when this governmental right of appropriation—this asserted paramount right—is exercised it shall be attended by compensation."

■ The Fifth Amendment of the Constitution of the United States and Article I, Section 18, of the Oregon

Constitution are identical in language and meaning. The word "property" in these provisions is not "used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law," but "to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *United States v. General Motors Corp.*, 323 US 373, 377-378, 65 S Ct 357, 89 L ed 311, 156 ALR 390. When the sovereign exercises the power of eminent domain "it deals with what lawyers term the individual's 'interest' in the thing in question. That interest may comprise the group of rights for which the shorthand term is 'a fee simple' or it may be an interest known as an 'estate or tenancy for years,' as in the present instance." *Ibid.* See 1 Lewis, Eminent Domain (3d ed) §§ 63, 64. Or it may be such a right as is involved in this case.

It was not, therefore, the "physical thing", the topsoil, for example, washed away by the flooding of the plaintiffs' lands, which was "taken" by the state, but the right or interest of the plaintiffs as thus defined. The judgments which have been entered are by way of compensation for the depreciation in the value of the plaintiffs' lands or, to put it another way, for the permanent injury to the lands which the court specially found. If there should be future floodings of these lands caused by the construction of the highway there could be no further recovery of damages by the plaintiffs. "If the works are constructed with due care and skill they are not a nuisance, and the only remedy is one for compensation, and the damages must be recovered once for all." 1 Lewis on Eminent Domain 93, § 80.

Both in the brief and on the oral argument these

propositions were conceded by counsel for the plaintiffs. They say in their brief:

> "Plaintiffs cannot, under the doctrine of res judicata, recover again for the taking that occurred as of January 1, 1956, or for a taking that results from the increased flow of water which occurs because of the change in the natural drainage system of surface water as a result of the Banfield construction."

It is also stated in the brief:

> "The change causes certain washings during some periods of the year. If the State were given an unrestricted flowage easement, it could again change the drainage system without regard to the consequences to plaintiffs' land."

We do not understand that the state claims the right to an "unrestricted flowage easement," but only an easement directly and necessarily related to floodings of plaintiffs' land which may in the future be caused by the highway and drainage system heretofore constructed by the state. Should the state change the drainage system and, as a result, should there be further floodings of and permanent injury to plaintiffs' lands, that would be an additional taking for which the state could be held liable to pay compensation to the plaintiffs.

■ There may, of course, be a taking apart from the acquisition of any interest in land by the sovereign. As stated in *United States v. General Motors Corp.,* supra, 323 US at 378:

> "The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or

most of his interest in the subject matter, to amount to a taking."

But in *United States v. Causby,* 328 US 256, 66 S Ct 1062, 90 L ed 1206, in a footnote at page 262, the court pointed out the distinction between a case where the government merely destroys property and one where it acquires an interest in property. The court said: "The present case falls short of the *General Motors* case. This is not a case where the United States has merely destroyed property. It is using a part of it for the flight of its planes." The *Causby* case was an action by the owner of land located near an airport. The land had on it a dwelling house and various outbuildings which were mainly used for raising chickens. The noise from flights of government aircraft from the airport at low levels over the plaintiff's land frightened the chickens to the extent that the use of the property as a commercial chicken farm was destroyed. The Supreme Court held that this amounted to a "taking" of plaintiff's property and affirmed a finding of the court of claims "that the United States had taken an easement over the property * * * and that the value of the property destroyed and the easements taken was $2,000." Because the findings of fact contained no precise description of the nature of the easement and particularly as to whether it was a permanent or a temporary one, the case was remanded to the court of claims for a determination of that question and an accurate description of the property taken. A recent decision to the same effect involving the flight of airplanes is *Griggs v. Allegheny County,* 7 L ed 2d 585.

In *United States v. Cress,* 243 US 316, 37 S Ct 380, 61 L ed 746, it appeared that as the result of the erection of a lock and dam in the Cumberland river

by the government a portion of plaintiff's land was subject to frequent overflows of water from the river. He sued the United States for compensation. In the course of an opinion affirming a judgment for the plaintiff the court said:

> "The taking by condemnation of an interest less than the fee is familiar in the law of eminent domain. Where formal proceedings are initiated by the party condemning, it is usual and proper to specify the precise interest taken, where less than the fee. But where, as in this case, the property-owner resorts to the courts, as he may, to recover compensation for what actually has been taken, upon the principle that the Government by the very act of taking impliedly has promised to make compensation because the dictates of justice and the terms of the Fifth Amendment so require (United States v. Great Falls Mfg. Co., 112 U. S. 645, 656; United States v. Lynah, 188 U. S. 445, 465), and it appears that less than the whole has been taken and is to be paid for, such a right or interest will be deemed to pass as is necessary fairly to effectuate the purpose of the taking; and where, as in this case with respect to the six and six-tenths acres, land is not constantly but only at intervals over-flowed, the fee may be permitted to remain in the owner, subject to an easement in the United States to overflow it with water as often as necessarily may result from the operation of the lock and dam for purposes of navigation." 243 US at 328-329.

■ Had the State Highway Commission in the first instance brought an action to condemn an easement for drainage purposes over plaintiffs' lands, that being one of the specific powers granted to it, there can be no doubt that it would have been awarded such an interest in the land to be affected upon payment of such compensation as might be determined by the court to be just. We can see no reason why the state's right

should be less where the positions of the parties are reversed and an action such as this, sometimes referred to as "inverse condemnation," is brought. The rule in such cases is that the awarding of permanent damages is equivalent to the acquisition of an easement or other interest in the land by condemnation. *Love v. Postal Telegraph-Cable Co.,* 221 NC 469, 20 SE2d 337; *Bernard v. State,* La App, 127 S2d 774, 780; *Kentucky Game and Fish Com'n v. Burnette,* 290 Ky 786, 791, 163 SW2d 50; *W & W Rld. Co. v. Fechheimer,* 36 Kan 45, 49, 12 P 362; *State Highway Comm. v. Puskarich,* 148 Kan 388, 391, 83 P2d 132; *Bruton v. Light Co.,* 217 NC 1, 6, 6 SE2d 822, 825; 30 CJS 179, Eminent Domain § 440.

■ The concession of the plaintiffs that their judgments estop them from the recovery of damages in case of future floodings from the same cause is in practical effect a concession of the validity of the principle just stated. We see no reason, therefore, why the respective rights and liabilities of the parties should not be clearly delineated in the judgments and, since the state's right to an easement follows as matter of law from the findings, we think it of small importance that the state did not pray for an easement in its answers.

Plaintiffs rely on *Tomasek v. Oregon Highway Com'n,* supra, note 1. In that case it was found that as a result of the construction by the commission of a bridge across the Santiam river as a part of the state highway system, the course and channel of the main river were changed "from its original location to a place over and across the lands of the plaintiff" and, further, that the lands of the plaintiff were eroded, the effect of which was to "wash away and

remove all the surface soil of the land, leaving only a gravel bed and rendering it wholly worthless for farming purposes." 196 Or at 138, 139. On appeal the commission contended that the judgment for the plaintiff was improper because there was no provision for any appropriation or conveyance to the state. The contention was rejected, but in that case there was a practically total destruction of the value of the property and the taking consisted in "the deprivation of the former owner rather than the accretion of a right or interest to the sovereign." *United States v. General Motors Corp.,* supra. As stated by Mr. Justice Holmes in *United States v. Welch,* 217 US 333, 339, 30 S Ct 527, 54 L ed 787: "But if it [a private right of way] were only destroyed and ended, a destruction for public purposes may as well be a taking as would be an appropriation for the same end."

The plaintiffs also cite *Steiger v. City of San Diego,* 163 CA2d 110, 329 P2d 94, as a contrary authority. We do not so consider it because the California Constitution, Article I, Section 14, provides "private property shall not be taken or *damaged* for public use without just compensation having first been made to * * * the owner * * *." (Italics added.) The court, in denying the city's claim of an easement, after referring to this provision of the constitution, said that the action did not involve a "taking" of property as though under eminent domain proceedings, but was one for damages to property—a clear point of distinction from the instant case.

It results from what we have said that the judgments should be modified and the causes remanded to the circuit court for the purpose of the entry of new judgments which shall provide for easements in favor of the state of Oregon over plaintiffs' lands for the

flowage of surface waters, including any increased flow thereof, which may occur as the direct result of the construction and installation by the state of Oregon, acting through the State Highway Commission, of the drainage and highway system referred to in the pleadings and findings herein.

The sole question presented on the cross appeals of the plaintiffs is whether the circuit court erred in denying their applications for the allowance of attorneys' fees. We think that the ruling was unquestionably right. Attorneys' fees may not be awarded unless a statute provides for them. There is no such statute applicable to proceedings like these. ORS 366.380 (9)⑨ authorizes the allowance of an attorney's fee to a defendant in a condemnation action brought by the State Highway Commission, except when the commission tenders to the defendant before commencing the action an amount equal to or greater than that assessed by the jury. See *Highway Com. v. Feves,* 228 Or 273, 365 P2d 97. The plaintiffs ask us to construe this section to cover these cases. That would not be construction, but a rewriting of the statute. The argument made in behalf of this contention is one properly to be addressed to the legislature, not to the court.

The judgments are modified in the respect hereinbefore indicated and the causes remanded for the entry of new judgments in conformity with this opinion.

Modified and remanded.

---

⑨ The costs and disbursements of the defendants, including a reasonable attorney's fee to be fixed by the court, shall be taxed by the clerk and recovered from the state; but if it appears that the commission tendered the defendants before commencing the action an amount equal to or greater than that assessed by the jury, the state shall recover its necessary disbursements from the defendants.