376 Mich. 311 (1965)
136 N.W.2d 896
In re URBAN RENEWAL, ELMWOOD PARK PROJECT.
CITY OF DETROIT
v.
CASSESE.
Calendar No. 37, Docket No. 50,210.
Supreme Court of Michigan.
Decided October 4, 1965.
Rehearing denied December 7, 1965.
Robert Reese, Corporation Counsel, Edward M. Welch, Ronald R. Sogge, and Geraldine B. Ford, Assistant Corporation Counsel, for plaintiff.
Irving B. Ackerman, for defendant.
ADAMS, J.
On June 7, 1950, form letters advising that condemnation was about to be started were sent by the city of Detroit to defendant, the owner of two properties, and to all other persons having an interest in properties in an area slated for urban renewal. Suit followed and lis pendens were filed. Ten years later the city abandoned the project and discontinued suit.
This condemnation action was begun February 1, 1962, pursuant to PA 1945, No 344 (CL 1948 and CLS 1961, § 125.71 et seq., as amended [Stat Ann 1948 Rev and Stat Ann 1963 Cum Supp § 5.3501 et seq.]). On trial, appellant contended the taking occurred *314 in 1950. Testimony was allowed to show that news of the first condemnation proceeding and acts of the city depressed values in the area. The city claimed the reduction in values was due to age of the buildings, stringent economic conditions, automation, and mass exodus to suburbia.
Evidence concerning appellant's parcel 495 showed that there was due in 1950 on a land contract $3,200.41. It was later foreclosed and the property repossessed. The property was vandalized, and, in 1959, upon directive from the buildings and safety engineer's department of the city of Detroit either to restore and recondition the bulding or tear it down, it was dismantled. The city's appraiser evaluated the parcel as a vacant lot worth $525. Parcel 663, a 4-family flat, was estimated by appellant to have a cash market value of $8,500. Rentals from the property declined from a gross of $956 in 1951 to $25 in 1962. The city appraiser's valuation was $4,600.
The trial judge instructed the jury:
"Your duty is to find the value of the property at the time of taking, which is the time of your verdict and at no other time." (Emphasis supplied.)
The jury's verdict for parcel 495 was $800. The verdict for parcel 663 was $5,500.
Both parties agree that value should be fixed as of the time of taking; but the city contends that in Michigan, as well as in other jurisdictions, the time of taking is that time when necessity is determined and compensation made or secured. Michigan Constitution 1908, art 13, § 1;[1]Anderson Trust Co. v. American Life Insurance Co., 302 Mich 575; Steadman v. Clemens, 321 Mich 54; St. Louis Housing Authority *315 v. Barnes (Missouri), 375 SW2d 144. Mere announcement of a proposed interstate highway is not a taking of property. Compensation is fixed only when property is actually taken or damaged. Bakken v. State, 142 Mont 166 (382 P2d 550).
Appellant concedes that generally the "taking" is construed in its literal sense, that is, after verdict is confirmed, the deed executed and award paid; but contends that there are unusual situations where the action of the city or other governmental body is such as to amount to a taking of private property, even though there is no eminent domain proceeding, and that in such situations compensation is given for the taking when it occurs. He cites Pearsall v. Board of Supervisors of Eaton County, 74 Mich 558, a road closing case;[2]Ranson v. City of Sault Ste. Marie, 143 Mich 661, a similar case in which the city restricted access to plaintiff's property; Grand Trunk Western Railroad Company v. City of Detroit, 326 Mich 387,[3] a case where the city attempted *316 to reduce the value of land by restrictive zoning; and Long v. City of Highland Park, 329 Mich 146, a similar zoning case.
Appellee concedes that in cases where property has been flooded because of public construction, the use and enjoyment of land reduced because of earrending noise of jet propulsion flights, or where ingress and egress has been made impossible by highway improvements, a taking will be held to have occurred. Cereghino v. State Highway Commission, 230 Or 439 (370 P2d 694); Bacon v. United States (Ct Claims), 295 F2d 936; Johnson v. Airport Authority of the City of Omaha, 173 Neb 801 (115 NW 2d 426).
Appellant claims that the following acts by the city constituted a taking:
"(1) Sent letters to tenants, occupants, et cetera, causing them to move; creating vacancies, forcing reduction in rents as inducements for occupants to stay; difficulty in acquiring new tenants;
"(2) Filing lis pendens, thereby impairing the sales of properties, reducing values and sales prices;
"(3) Refusal of the building department to issue permits for substantial improvements;
"(4) Vacancies followed by lax police protection, causing vandalism;
"(5) Reduction in refuse collections, street cleaning and street repairs and other city services, giving a slum appearance to the neighborhood;
"(6) Intense building department inspection and citations against owners for any violations of the building code;
"(7) Notices by the building department to repair, board up, or tear down vandalized buildings;
*317 "(8) Razing of buildings vacant and vandalized, or boarding them up, giving the area a blighted, deserted, and waste land appearance;
"(9) Refusal by governmental agencies to permit long established licensed businesses to continue in the same building while awaiting the condemnation trial;
"(10) Delaying the trial for over 10 years, then discontinuing the same, followed by new proceedings with appraisals based on 1962 values of now vandalized properties in now ruined areas."
The principle is firmly established in Michigan law by Pearsall, Ranson, Grand Trunk, and Long, supra, that a city may not by deliberate acts reduce the value of private property and thereby deprive the owner of just compensation. Some of the acts charged against the city of Detroit, such as lax police protection, reduction in refuse collections, street cleaning and street repair, go merely to the performance of city services of a general nature. The issue of satisfactory performance of such services would not be relevant in the absence of proof of calculated action or specific directives by city officials for the purpose of reducing the value of appellant's properties. On the other hand, many of the acts alleged by appellant, if so performed,  such as sending letters to tenants, filing lis pendens, intense building department inspection and citations against owners for any violations of the building code, and, finally, refusal to permit a long-established business to continue in a building because it was going to be condemned  would fall within the same category as the acts in Pearsall, Ranson, Grand Trunk and Long, supra, and would constitute a taking.
After 1950, appellant continued to rent parcel 663 and to collect payments on the land contract. Evolutionary *318 changes in the neighborhood, as claimed by the city, may have occurred since institution of the first condemnation proceeding. Such facts could disprove appellant's claims and support the city's position that there was no taking until the second condemnation proceeding. When the taking occurred, whether in 1950 or at some later date, is a question of fact which should be determined by the jury. The value of the properties should then be ascertained as of the time of taking.
This result is supported by such cases as City of Cleveland v. Carcione, 118 Ohio App 525 (190 NE 2d 52), and Foster v. Herley, Director of the Detroit Housing Commission (CA 6), 330 F2d 87, which recognize that, where condemnation proceedings are protracted, the whole character of an area may be changed to the detriment of the property owner during the course of the proceedings. If an area has been made a wasteland by the condemning authority, the property owner should not be obliged to suffer the reduced value of his property. The converse is also true. Where condemnation proceedings tend to increase the value of property, the property owner is not entitled to the increased value. See Anderson v. United States (CA 6), 179 F2d 281, and United States v. Chandler-Dunbar Water Power Company, 229 US 53 (33 S Ct 667, 57 L ed 1063).
This appellant property owner raises no question of consequential damage. He seeks recovery for the taking only. First, the date of taking should be determined. Next, the value of the property as of that date is to be ascertained. There should be deducted from the award any amounts that accrued to the owner from his possession of the property or that reflect the value of its use following the taking. In the instant case this would consist of the rentals which Cassese received for parcel 663 and the land *319 contract payments which he received for parcel 495, less any expenses in connection with maintenance, upkeep or repossession, of the properties, such as water and light bills, insurance, taxes, et cetera. Finally, interest should be added from the date of taking to the date of award. See In re Petition of State Highway Commissioner, 279 Mich 285, 296.[4]
We are not unmindful of appellee's contention that there was no error because at the time this case was tried the jury was the judge of both the facts and the law. The function of a judge in a condemnation proceeding has not been entirely clear in Michigan law. See Comment, Relation of Judge and Jury in Michigan Condemnation Proceedings, 58 Mich L Rev 248. In Toledo, A.A. & G.T.R. Co., v. Dunlap, 47 Mich 456, 466, this Court stated "the Constitution as well as the principles of the common law" made the jury the judge of both law and fact in a condemnation proceeding.[5] From that premise, this Court concluded that the judge acts "in an advisory capacity only." In re Widening Harper Avenue, 237 Mich 684, 687; In re Acquisition of Land for Civic Center, 335 Mich 582, 591. It is to be noted, however, that in the last cited case this Court, with reference to a charge by the judge, found as follows (p 593):
"The second proposition was stated so clearly by the court as conditional upon an affirmative finding *320 as to the first proposition that the jury could not be considered to have misunderstood it. No prejudice to defendants could very well have resulted."
The 1908 Constitution, art 13, § 1, provided:
"Private property shall not be taken * * * for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law." (Emphasis supplied.)
By constitutional mandate, appellant was entitled to just compensation either made or secured prior to the taking. Kauper, Basic Principles of Eminent Domain, 35 MSBJ, Oct p 10; Anderson Trust Co. v. American Life Insurance Co., supra, p 584. If, in fact, the taking occurred before determination of compensation, the requirement of just compensation still remains. An instruction by the judge to the jury, whether viewed as binding or advisory, that the time of taking is a time subsequent to when it actually occurred is so erroneous and misleading as to constitute error. The jury should have been properly charged. It was not. The charge could well have caused the jury to make an improper conclusion as to the applicable law.
Whether appellant's claim, if proved, would be barred by the statute of limitations is not passed upon, the point not having been raised on this appeal.
Reversed and remanded for new trial. Costs to appellant.
T.M. KAVANAGH, C.J., and DETHMERS, KELLY, SOURIS, SMITH, and O'HARA, JJ., concurred with ADAMS, J.
BLACK, J., concurred in result.
NOTES
[1] For current provisions, see Const 1963, art 10, § 2.  REPORTER.
[2] "The term `taking' should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only; but it should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, or from any of the appurtenances thereto. * * *

"If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the compensation which the Constitution gives therefor, and such damage or destruction must be regarded as a `taking.'" (p 561.)
[3] "The trial judge referred to other condemnation proceedings now going on and also stated that the city expects to condemn a portion of this property involved, tear down the buildings, and erect or interest private investors in erecting modern multiple dwellings, and that seems to the court to offer the best solution of the problem. He further stated that the testimony shows that all of this property is to be eventually condemned and used for multiple dwellings, and this seemed the only way that this blighted area could be rehabilitated. The statement is plain and shows, as does the record, that the plaintiffs' property is of practically no value for multiple dwellings, that it must be condemned, together with the entire area, before it can be property used for the purposes contemplated. To follow the reasoning of the trial judge, therefore, 2 steps are to be taken: First, to render plaintiffs' properties, through the zoning ordinance, of little, if any, value, and then to condemn them. If the new zoning ordinance were set aside as unreasonable and confiscatory, as we hold it should be, any claims of defendant minimizing the value or lack thereof of the property for industrial purposes up to the time of the commencement of the condemnation proceedings could be shown in determining the amount of the award in a proper action." (p 399.)
[4] "We are not in accord with appellants' contention that interest should not be allowed because there was no physical taking of the various properties but instead the owners have been permitted to continue their occupation and use thereof. If this contention were sound the property owners in cases of this character wherein there is no physical taking of their property, might be indefinitely deprived of payment and wholly without redress for the attendant loss. In such event their constitutional right to `just compensation' would clearly be defeated." (p 296.)
[5] In that case the Court held that from an inspection of the record there was no prevailing reason for holding the jury had been misled by the charge to the jury (p 467).