Argued May 4, reversed and remanded June 22, 1966

# THORNBURG ET AL v. THE PORT OF PORTLAND
415 P. 2d 750

*Julian Herndon, Jr.,* argued the cause and filed briefs for appellants.

*Lofton L. Tatum,* Portland, argued the cause for respondent. With him on the brief were John G.

Holden and Wood, Wood, Tatum, Mosser & Brooke, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Hammond, Justices.

## GOODWIN, J.

This is the second appeal arising out of Mrs. Thornburg's claim in "inverse condemnation" for a taking alleged to have been accomplished by the Port of Portland. See *Thornburg v. Port of Portland,* 233 Or 178, 376 P2d 100 (1963). Mrs. Thornburg appears individually and as executrix. We shall refer to the plaintiff in the singular.

Plaintiff introduced evidence in support of her allegations that the landing and take-off patterns of the Portland International Airport during the years in question constituted a nuisance. To prevail it was necessary to prove a substantial interference with the use and enjoyment of her property and a resulting decline in the market value thereof. In the first *Thornburg* case we held that such loss of value caused by the airport, if proven, could amount to a taking for which a remedy in inverse condemnation would lie. The purpose of the second trial was to determine whether the plaintiff's facts measured up to her theory of recovery. The jury found against the plaintiff. On this appeal eleven assignments of error challenge the instructions to the jury.

No useful purpose would be served by setting the challenged instructions out at length. Eight of them, all requested by the defendant, repeatedly called the jury's attention to the social utility of the airport. The social utility of the airport was not a matter to

be ignored, but neither was it a matter in serious controversy. The defendant's lawful right to condemn sufficient land to operate an airport, had it chosen that course, is conceded.

The question of primary importance was whether or not the overflights and flight patterns created so substantial an interference with the use and enjoyment of plaintiff's land, as measured by a decline in the fair market value thereof, as to constitute a taking. *Thornburg v. Port of Portland,* supra at 194; *Martin v. Port of Seattle,* 64 Wash2d 309, 391 P2d 540 (1964).

It is apparent from the colloquy of court and counsel that the trial court was, in part at least, led into error by the following language in our former opinion:

> "While it is no doubt anticipatory to advert to the problem of instructing the jury in cases of this kind, it is relevant to point out that the nuisance theory provides the jury a useful method for balancing the gravity of the harm to the plaintiff against the social utility of the airport's conduct, in a way that would not be available if the trespass theory were used. In Restatement, Torts, §§ 826-831, we find principles for balancing gravity against utility which can be adapted to jury instruction so that the question of reasonableness need not be any more mysterious to the jury in this type of case than it is in an automobile accident case. The balancing of private rights and public necessity is not a novel problem  *  *  *." *Thornburg v. Port of Portland,* 233 Or at 193.

In that case we were deciding whether or not a particular remedy was available to a litigant. The dictum concerning jury instruction, it now appears, was both unnecessary and unfortunate. Not surprisingly, the defendant convinced the trial court that the quoted

dictum constituted an invitation to extract language from the several pages of theoretical comment in the Restatement. The defendant's instructions utilized virtually all the language that would help a defendant and omitted that which would favor a plaintiff. The net result of the instructions was submission of the case to the jury upon abstract, repetitious, and conflicting instructions.

■ We have noted that it is sometimes helpful to go to the Restatement for language that will shorten or clarify instructions. See *Gossett v. Simonson,* 243 Or 16, 411 P2d 277 (1966). However, care and discretion must be exercised, particularly when one of the parties selects the text material. As the United States Supreme Court has observed:

> "* * * [W]e do not admit that a court is bound to give to the jury, at the instance of counsel, every philosophical remark found in text-books of the law, however wise or true they may be in the abstract, or however high the reputation of the author." *Walker v. Johnson,* 96 US 424, 429, 24 LED 834, 836 (1878).

■ The proper test to determine whether there has been a compensable invasion of the individual's property rights in a case of this kind is whether the interference with use and enjoyment is sufficiently direct, sufficiently peculiar, and of sufficient magnitude to support a conclusion that the interference has reduced the fair market value of the plaintiff's land by a sum certain in money. If so, justice as between the state and the citizen requires the burden imposed to be borne by the public and not by the individual alone. See Murrah, C. J., dissenting, *Batten v. United States,* 306 F2d 580, 587 (10th Cir 1962).

The decision to submit the issue to a jury in the

first instance necessarily involves policy considerations. The trial judge must make this preliminary decision after screening the evidence to rule out the mere annoyance, or interference of a kind that would be objectionable only to the supersensitive.

■ The jury will decide, if the court finds that there is a jury question, what the facts are. If the jury finds an interference with the plaintiff's use and enjoyment of his land, substantial enough to result in a loss of market value, there is a taking. If the jury determines that there has been a taking, its only concern thereafter is to fix the monetary compensation therefor.

■ The court can tell the jury by way of special instruction in this type of case that there is a difference between negligible, or inconsequential, interferences which all property owners must share and the direct, peculiar, and substantial interferences which result in a loss of market value to the extent that a disinterested observer would characterize the loss as a taking. It is then for the jury to decide from all the evidence upon which side of the line a particular controverted nuisance falls. The error below was in telling the jury in effect to consider the utility of the airport in deciding whether the plaintiff's property had been depreciated in value by the defendant's activities. This notion is wholly inconsistent with the law of eminent domain, and had no place in the jury's consideration of a decrease in fair market value.

■ It is argued by the defendant that the judgment below is one that ought to be affirmed on its merits despite any error. This court does not, however, in the ordinary action at law, attempt to make findings of fact upon conflicting testimony. The challenged instructions were potentially confusing to the jury. Accordingly, we send the case back for yet another trial.

See *Taylor v. Lawrence,* 229 Or 259, 266, 366 P2d 735 (1961).

■ Other assignments of error challenge the rulings of the trial court which excluded certain value evidence tendered by the plaintiff. The evidence was properly excluded. The sale in question was not shown to have been made within a period of time reasonably close to the time in question. Furthermore, the sale had elements of a distress sale following a foreclosure. On both counts such evidence is properly excluded.

Reversed and remanded.