LINCOLN LOAN CO., *Appellant, v.* STATE
EX REL STATE HIGHWAY COMMISSION
(No. 405 715), *Respondent.*
536 P2d 450

Steven E. Benson, Milwaukie, argued the cause and filed the brief for appellant.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Mary Deits, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

◼ Plaintiff appeals from an order of the trial court sustaining a demurrer to its complaint seeking damages on the theory of inverse condemnation.[1] The trial court sustained the demurrer on the ground that the allegations of the complaint as a matter of law did not allege facts constituting a taking.

◼ The facts contained in plaintiff's complaint are accepted as true for the purposes of ruling on a demurrer, and it is assumed that plaintiff stated his case in the way most favorable to him. Smith v.

---

[1] Inverse condemnation is the term used to describe a cause of action against a government agency to recover the value of property taken by the agency, although no formal exercise of the power of eminent domain has been completed. Thornburg v. Port of Portland, 233 Or 178, 376 P2d 100 (1963).

*Cooper,* 256 Or 485, 475 P2d 78, 45ALR3d 857 (1970) ; *Baker v. State Bd. of Higher Education,* 20 Or App 277, 531 P2d 716, Sup Ct *review denied* (1975).

The complaint alleged: Plaintiff owns two plots of land in Multnomah County. Approximately 10 years prior to the filing of the complaint, the Oregon State Highway Commission declared in a resolution the necessity of acquiring these plots of land from plaintiff for the purpose of constructing the East Portland Freeway. The complaint further alleged:

## "VI

"That at the time of declaring the resolution aforesaid and at all times thereafter defendant commenced the taking of real property in the vicinity of plaintiff's property for highway purposes and did in fact file condemnation proceedings against plaintiff's property herein. That in so taking said properties, defendant has caused the following: (a) Caused notices to be published that all real property within the areas designated by the State of Oregon would be taken for roadway purposes; (b) Caused notices to be given that no compensation would be awarded for improvements to said real property even though such improvements may be in the nature of maintenance only; (c) Caused dwellings to be dismantled in the surrounding properties, creating noise, dust, and confusion and encouraging the decay and desertion of the area; (d) Caused heavy equipment including trucks and tractors to be brought into the neighborhood for use in demolishing adjacent buildings and thereby further encouraging the decay and desertion of the area; (e) Caused notices to be given to tenants that they would be required to vacate the buildings in the area because the defendant was taking them for roadway purposes; (f) Caused notices to be published that defendant would pay moving expenses and other compensation to tenants if they vacated plaintiff's premises described above. That the acts herein alleged have made it impossible

to maintain reasonable or any rental schedules or maintenance of plaintiff's dwelling.

## "VII

"That the acts alleged in paragraph VI hereof by the defendant have placed a 'cloud of condemnation' over the plaintiff's property which resulted in a 'condemnation blight' and hence a de facto taking, not of possession of the property, but of a substantial use and benefit thereof."

Plaintiff did not seek to recover the market value of its property, but rather sought damages for reduction in the value of the property and reduced rental income.

■ The only issue is whether the facts detailed in the complaint are sufficient to constitute a "taking" of plaintiff's property for which compensation must be paid under Art I, § 18, Oregon Constitution.[2] We hold that they are insufficient.

A "taking" has been defined by the Oregon Supreme Court as

"* * * any destruction, restriction or interruption of the common and necessary use and enjoyment of the property of a person for a public purpose * * *." *Morrison v. Clackamas County,* 141 Or 564, 568, 18 P2d 814 (1933), cited with approval in *Thornburg v. Port of Portland,* 233 Or 178, 185, 376 P2d 100 (1963), and *Moeller et ux v. Multnomah County,* 218 Or 413, 424, 345 P2d 813 (1959).

■ It is not necessary that a taking completely destroy plaintiff's property, or completely deprive him of possession. *Tomasek v. Oregon Highway Com'n.,* 196 Or 120, 248 P2d 703 (1952); *Morrison v. Clackamas*

---

[2] Art I, § 18 of the Oregon Constitution reads in part:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation * * *."

*County,* supra. However, there must be interference with the physical use and enjoyment of the property involved. An act of the government which merely affects property values is not a "taking" for which compensation must be paid. *Highway Com. v. Ralston et ux,* 226 Or 143, 359 P2d 529 (1961).

In *Moeller et ux v. Multnomah County,* supra, the Supreme Court summarized the previous Oregon cases dealing with what constitutes a "taking":

> "In each of the Oregon cases above discussed and in other Oregon cases on the subject of inverse condemnation, there has been a substantial taking or destroying of the individual's property. Most of them have involved flooding and erosion, but *the 'taking' has deprived the owner of a substantial part of his property as well as the use thereof, and usually permanently.*
>
> "In the case under consideration, there is no evidence that the plaintiffs were forced to abandon their property or any part thereof. There was no cessation of the use thereof, except possibly the small amount of water in the basement for a short time, which was, no doubt, an inconvenience but surely not a deprivation of use and enjoyment sufficient to amount to a 'taking' under the Oregon Constitution, even giving full credence to the so-called modern trend.
>
> "There is no doubt that there was some 'damage,' but, as above pointed out, the people of Oregon have not seen fit to amend their constitution to include 'damage' with 'taking' so as to waive the immunity of the state or county in those actions for damages which do not amount to a 'taking.' * * *." 218 Or at 427. (Emphasis supplied.)

*Moeller* concerned a house which was subjected to dirt, sand, dust and concussions from nearby blasting operations. The court held that no taking occurred.

■ It is not necessary that the taking involve an actual trespass on plaintiff's land. *Thornburg v. Port of Portland,* supra, involved the noise from low-flying planes which plaintiff claimed was sufficient to deprive him of the use of his land. The court held that if the nuisance were severe enough to actually oust plaintiff from the enjoyment of his land it would constitute a taking. However, a tort committed by the government which may cause damage but does not deprive the owner of the use of his land does not constitute a taking.[8]

In the case at bar, the plaintiff concludes that the acts of the highway department, "resulted in a 'condemnation blight' and hence a de facto taking, not of possession of the property, but of substantial use and benefit thereof." But it fails to allege either acts of the highway department which continually interfered with its use of its property or that it was in fact deprived of possession thereof. All that is alleged is monetary damages which resulted from the "condemnation blight."

Our holding that the activities of the highway department in connection with the anticipated condemnation of plaintiff's property which are alleged in plaintiff's complaint do not constitute a taking is in accord with the decisions in several other jurisdictions.

In *City of Buffalo v. Clement Co.,* 28 NY2d 241, 321 NYS2d 345, 269 NE2d 895 (1971), the New York Court of Appeals said:

"* * * [I]t is clear that a *de facto* taking requires a physical entry by the condemnor, a phys-

---

[8] This case was remanded for a new trial and there was a subsequent appeal. Thornburg v. Port of Portland, 244 Or 69, 415 P2d 750 (1966). Contrary to the plaintiff's position we see no difference in the holding of the second case which would affect the case at bar.

ical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property. On the other hand, 'condemnation blight' relates to the impact of certain acts upon the value of the subject property. It in no way imports a *taking* in the constitutional sense * * *.

"The facts herein fail to disclose any act upon the part of the condemning authority which could possibly be construed as an assertion of dominion and control. Indeed, it cannot be said that the city, by its actions, either directly or indirectly deprived Clement of its possession, enjoyment or use of the subject property. We simply have a manifestation of an intent to condemn and such, even considering the protracted delay attending final appropriation, cannot cast the municipality in liability upon the theory of a 'taking' for there was no appropriation of the property in its accepted legal sense. As the Supreme Court has held: 'A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense' (*Danforth v. United States*, 308 U.S. 271, 285 [60 S Ct 231, 236, 84 L Ed 240 (1939)]). This reasoning, it may be added, has been applied time and time again to deny compensation based upon the asserted theory that the threat of condemnation constitutes an actual taking * * *." 28 NY2d at 255.

*See also, City of Chicago v. Loitz,* 11 Ill App3d 42, 295 NE2d 478 (1973); *Cayon v. City of Chicopee,* 71 AS 1785, 360 Mass 606, 277 NE2d 116 (1971); *Swampscott v. Remis,* 350 Mass 523, 215 NE2d 777 (1966); *Freeman v. Paterson Redevelop. Agency,* 128 NJ Super 448, 320 A2d 228 (1974); *City of Houston v. Biggers,* 380 SW2d 700 (Tex Civ App), *cert denied* 380

US 962 (1964). For contrary holdings *see, Foster v. Detroit,* 254 F Supp 655 (DC Mich), *aff'd* 405 F2d 138 (6th Cir 1966) ; *In Re Urban Renewal, Elmwood Park,* 376 Mich 311, 136 NW3d 896 (1965).

Since facts relied on by plaintiff in his complaint do not, as a matter of law, constitute a "taking" of his property, the demurrer was properly sustained.

Affirmed.