LINCOLN LOAN CO., *Petitioner,*

*v.*

STATE HIGHWAY COMMISSION, *Respondent.*

545 P2d 105

*Steven E. Benson,* Portland, argued the cause and filed a brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Mary Deits, Assistant Attorney General.

Before O'Connell, Chief Justice, and McAllister, Denecke, Tongue, Howell, and Bryson, Justices.

McALLISTER, J.

## McALLISTER, J.

Plaintiff Lincoln Loan Co. brought this inverse condemnation[1] action against the Oregon State Highway Commission to recover damages for an alleged taking of plaintiff's property in the process of the construction of the East Portland Freeway by allegedly placing a "cloud of condemnation" over the property, which resulted in a "condemnation blight" and a de facto taking, not of the possession of the property, but of a substantial use and benefit thereof.

Plaintiff alleged that about ten years prior to the filing of the complaint in this action the defendant, by resolution, declared plaintiff's property necessary in the construction of the said East Portland Freeway. We quote paragraph VI of plaintiff's complaint:

"That at the time of declaring the resolution aforesaid and at all times thereafter defendant commenced the taking of real property in the vicinity of plaintiff's property for highway purposes and did in fact file condemnation proceedings against plaintiff's property herein. That in so taking said properties, defendant has caused the following:

(a) Caused notices to be published that all real property within the areas designated by the State of Oregon would be taken for roadway purposes;

(b) Caused notices to be given that no compensation would be awarded for improvements to said real property even though such improvements may be in the nature of maintenance only;

(c) Caused dwellings to be dismantled in the surrounding properties, creating noise, dust and confusion and encouraging the decay and desertion of the area;

(d) Caused heavy equipment including trucks and tractors to be brought into the neighborhood for use in demolishing adjacent buildings and thereby further encouraging the decay and desertion of the area;

---

[1]Inverse condemnation is the term used to describe a cause of action against a governmental agency to recover the value of property taken by the agency although no formal exercise of the power of eminent domain has been completed by the taking agency. *Thornburg v. Port of Portland,* 233 Or 178, 180, 376 P2d 100 (1963).

(e) Caused notices to be given to tenants that they would be required to vacate the buildings in the area because the defendant was taking them for roadway purposes;

(f) Caused notices to be published that defendant would pay moving expenses and other compensation to tenants if they vacated plaintiff's premises described above.

That the acts herein alleged have made it impossible to maintain reasonable or any rental schedules or maintenance of plaintiff's dwelling."

Plaintiff alleged that the value of its property was reduced by $5,000 and that the rental income from the property was also reduced. Plaintiff further alleged that it has been deprived of its property without just compensation in violation of its rights under the Fourteenth Amendment to the United States Constitution.[2]

Defendant demurred to plaintiff's complaint on the ground that the facts alleged failed to state a cause of action. The trial court sustained the demurrer. The Court of Appeals affirmed. *Lincoln Loan v. State Highway Commission,* 21 Or App 689, 536 P2d 450 (1975). We granted review.

The sole issue is whether plaintiff's complaint states a cause of action in inverse condemnation.

The demurrer admits "as true all the facts therein well pleaded and all the intendments and inferences therefrom that can properly and reasonably be drawn." *Mattoon v. Cole,* 172 Or 664, 669, 143 P2d 679 (1943); *Lyden v. Goldberg,* 260 Or 301, 306, 490 P2d 181 (1971).

This court has long been committed to the rule that

---

[2] Since Article I, § 18, of our Oregon Constitution is identical in language and meaning with the Fifth Amendment of the Constitution of the United States, as applied to the states by the Fourteenth Amendment, we prefer to rest our decision in this case on our Oregon constitutional provision. In fact, the briefs and the opinion of the Court of Appeals refer to Article I, § 18, as the controlling constitutional provision.

"any destruction, restriction or interruption of the common and necessary use and enjoyment of the property of a person for a public purpose constitutes a 'taking' thereof." *Morrison v. Clackamas County,* 141 Or 564, 568, 18 P2d 814 (1933). In that case the water of the Sandy River was diverted by a jetty

"from its natural course and caused the entire flow of the river to be driven onto, against and over the plaintiff's land, with such force and violence that all his personal property and improvements were lost and destroyed and the surface of said real property was completely washed away and rendered utterly valueless, with the further result that a new channel for said river was created over and across plaintiff's land and said land is now situated in and occupied by the main bed of the stream. * * *" 141 Or at 566-567.

In *Morrison* the court further said:

"It is not necessary that the owner of property be actually dispossessed or that the property be completely destroyed in order to constitute a taking within the meaning of the constitutional provisions. *U. S. v. Cress,* 243 U.S. 316 (37 S. Ct. 380, 61 L. Ed. 746); *Miller v. Morristown,* 47 N. J. Eq. 62 (20 Atl. 61); *Barron v. Memphis,* 113 Tenn. 89 (80 S. W. 832, 106 Am. St. Rep. 810); *Great Northern Ry. Co. v. State,* 102 Wash. 348 (173 P. 40, L. R. A. 1918E, 987)." 141 Or at 569.

The rule stated in *Morrison v. Clackamas County* was again applied in *Tomasek v. Oregon Highway Com'n,* 196 Or 120, 248 P2d 703 (1952). *Tomasek* was a similar inverse condemnation case in which the Highway Commission, by constructing a new bridge across the Santiam River caused said river at times of high water to erode plaintiff's land located about one-half mile downstream from the bridge and to change the channel of the main river to a place over and across the lands of plaintiff. There was evidence that the erosion of plaintiff's land extended back from the original bank of the river for a distance of approximately 400 feet and that a total of 63 acres had been eroded. In affirming a judgment for plaintiff based on a jury ver-

dict, the court quoted from and relied on *Morrison v. Clackamas County,* supra. In *Tomasek* the court said:

"* * * But the direct effect of this construction was a partial destruction of plaintiff's lands, it constituted a taking for a public purpose within the meaning of the constitution. It is *the fact of taking, rather than the manner of taking,* that is important. For this taking of his land, plaintiff is entitled to compensation." (Emphasis supplied.) 196 Or at 151.

*Moeller et ux v. Multnomah County,* 218 Or 413, 345 P2d 813 (1959) was another inverse condemnation action in which the plaintiffs alleged that Multnomah County had "taken" its property by blasting operations conducted in a nearby quarry at Rocky Butte, which caused "jars and concussions" similar to earthquake tremors, which in turn caused cracks in the concrete basement and patio floors and in the walls and ceilings of some rooms and other damage to the property.

We held that, tested by demurrer, the complaint stated a cause of action. We then held that the evidence offered in support of the complaint was not sufficient to prove

"either actual physical taking of the plaintiffs' property by the defendant, or sufficient evidence of destruction, restriction or interruption of the necessary use and enjoyment of their property to warrant recovery under the theory of inverse condemnation, by the standards set by this court in the two above-mentioned cases. [Morrison v. Clackamas County, 141 Or 564, 18 P2d 814 (1933) and Tomasek v. Oregon Highway Com'n, 196 Or 120, 248 P2d 703 (1952).]" 218 Or at 430-431.

We further held that "taking" as defined in *Morrison v. Clackamas County* and as shown in *Tomasek v. Oregon Highway Com'n,* both supra, was still the proper rule in Oregon.

In *Cereghino v. State Highway Commission,* 230 Or 439, 370 P2d 694 (1962) the theory of inverse condemnation was broadened. In that case the plaintiffs recovered judgments against the State Highway Commission because of a "taking" caused by the relocation of

the Columbia River Highway and the consequent collection of surface waters in large quantities which were discharged together with mud, dirt and silt upon the lands of plaintiffs. This court said that the word "property" as used in Article I, § 18, was not

> " 'used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law,' but 'to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.' *United States v. General Motors Corp.*, 323 US 373, 377-378, 65 S Ct 357, 89 L ed 311, 156 ALR 390. * * *" 230 Or at 445.

It is therefore the landowner's rights which are "taken" by the state in inverse condemnation, not part of the land itself. 230 Or at 450. The state need not benefit from the "taking" for the action to lie. 230 Or at 450.

In the significant case of *Thornburg v. Port of Portland,* 233 Or 178, 376 P2d 100 (1963), the rule of inverse condemnation was further clarified and applied in a case based on alleged noise nuisance caused by jet planes flying near plaintiffs' property. In *Thornburg* the plaintiffs owned and resided in a house located about 6,000 feet beyond the end of one runway of the airport and directly under the glidepath of aircraft using it. The home was also about 1,500 feet beyond the end of a second runway and about 1,000 feet to the side of the glidepath of aircraft using that runway. The court said:

> "A taking within the meaning of Oregon Constitution, Art I, §18, has been defined as 'any destruction, restriction or interruption of the common and necessary use and enjoyment of the property of a person for a public purpose * * *.' *Morrison v. Clackamas County,* 141 Or 564, 568, 18 P2d 814 (1933). See Note, 16 Or L Rev 155 (1937). The definition from *Morrison v. Clackamas County,* supra, is broad enough to cover a continuing nuisance, and hence the plaintiffs' case, unless there is some policy reason for limiting its application." 233 Or at 184-185.

The *Thornburg* case was significant because it expanded the rule of inverse condemnation from purely trespassory actions to actions based on nuisance. As a result, it is not important whether the complaint in the instant case alleges a cause of action in trespass or in nuisance or a combination of both trespass and nuisance. We quote again from *Thornburg:*

"* * * In summary, a taking occurs whenever government acts in such a way as substantially to deprive an owner of the useful possession of that which he owns, either by repeated trespasses or by repeated nontrespassory invasions called 'nuisance'. * * *" 233 Or at 192.

We remanded *Thornburg* for a new trial and pointed out that if the activities of the government unreasonably interfere with the owner's use of his property and in so substantial a way as to deprive him of the practical enjoyment of his land there has been a taking proscribed by Article I, § 18, of our constitution.

■ The *Thornburg* case was retried and again appealed to this court, 244 Or 69, 415 P2d 750 (1966), and again reversed because of erroneous instructions to the jury. In considering the test to be applied by a jury in deciding whether the evidence establishes a taking, we said:

"The proper test to determine whether there has been a compensable invasion of the individual's property rights in a case of this kind is whether the interference with use and enjoyment is sufficiently direct, sufficiently peculiar, and of sufficient magnitude to support a conclusion that the interference has reduced the fair market value of the plaintiff's land by a sum certain in money. If so, justice as between the state and the citizen requires the burden imposed to be borne by the public and not by the individual alone. See Murrah, C. J., dissenting, *Batten v. United States,* 306 F2d 580, 587 (10th Cir 1962)." 244 Or at 73.

■ Viewed in the light of our precedents as set out above, we hold that plaintiff's complaint states facts sufficient to constitute a cause of action in inverse condemnation and that the trial court erred in sustain-

ing the demurrer. Plaintiff has alleged adequate facts which indicate a substantial interference by the state with the use and enjoyment of its property. The combination of the acts alleged in plaintiff's complaint, the alleged pervasive extent of that combination of acts and the alleged duration of those acts over a ten year period unite to allege a substantial interference with the use and enjoyment of its property by plaintiff.

We have examined the cases from other jurisdictions and find that the following authorities support our conclusion in this case: *Conroy-Prugh Glass Co. v. Commonwealth Dept. of Trans.,* 456 Pa 384, 321 A2d 598, 602 (1974); *Klopping v. City of Whittier,* 8 Cal 3d 39, 500 P2d 1345, 1356, 104 Cal Rptr 1 (1972); *Luber v. Milwaukee County,* 47 Wis2d 271, 177 NW2d 380, 384 (1970); *Foster v. City of Detroit,* 254 FS 655 (ED Mich 1966), aff'd 405 F2d 138 (6th Cir 1968); *City of Detroit v. Cassese,* 376 Mich 311, 136 NW2d 896, 900 (1965); *City of Cleveland v. Carcione,* 118 Ohio App 525, 190 NE2d 52, 56-57 (1963). The following is quoted from *Conroy-Prugh Glass Co. v. Commonwealth Dept. of Trans.:*

"* * * According to appellant's averments, the Commonwealth's publicity about the imminence of condemnation has caused appellant to lose tenants at such an accelerating rate that rental income from the property is no longer sufficient to cover the taxes on the property. Thus, appellant finds itself facing a Treasurer's sale. Should we hold that no 'taking' has yet occurred until the formal condemnation, § 604 of the Eminent Domain Code will be of no help to appellant because appellant will not be the owner of the property when the condemnation finally takes place. Recognizing, as we do, that the Commonwealth is required to publicize and hold hearings in advance of the initiation of formal condemnation proceedings, we believe that when these hearings and this publicity cause the owner of a property to lose tenants to such an extent that the property no longer generates sufficient income to pay the taxes, which, in turn, leads to a threatened loss of the property, that property owner has a right to the appointment of viewers to award it compensation for its property. To hold that a

property owner in such circumstances has no such remedy, would be to deprive that property owner of his property without due process of law." 456 Pa at 392-393.

The Court of Appeals, in affirming the trial court, relied on *City of Buffalo v. J. W. Clement Co.,* 28 NY2d 241, 321 NYS2d 345, 269 NE2d 895 (1971). *Clement* has been strongly criticized, Kanner, *Condemnation Blight: Just How Just is Just Compensation?,* 48 Notre Dame Law. 765, 794-800 (1973), and it is not in harmony with our cases and we find it unpersuasive. The following cases cited by the Court of Appeals squarely support its holding: *Freeman v. Paterson Redevelopment Agency,* 128 NJ Super 448, 320 A2d 228, 233 (1974); *City of Chicago v. Loitz,* 11 Ill App 3d 42, 295 NE2d 478, 480 (1973); *City of Houston v. Biggers,* 380 SW2d 700, 705 (Tex City App 1964), all of which held that preliminary steps taken to exercise the power of eminent domain without an actual physical taking or invasion are not actionable by the landowner. As with *Clement,* these cases are not persuasive.

We find that the Court of Appeals erred in affirming the action of the trial court in sustaining the demurrer to the plaintiff's complaint. As we have said, the complaint contains facts sufficient to state a cause of action in inverse condemnation. It will be for the trier of fact to determine whether the evidence establishes an interference with the use and enjoyment of its property by plaintiff substantial enough to constitute a taking. The case is remanded to the trial court with instructions to overrule defendant's demurrer to plaintiff's complaint and for further proceedings not inconsistent with this opinion.