SUESS BUILDERS COMPANY et al,
*Appellants,*

*v.*

CITY OF BEAVERTON et al,
*Respondents.*

(No. 40-569, CA A20101)

642 P2d 361

Terry D. Morgan, Portland, argued the cause for appellants. On the appellants' brief was John W. Shonkwiler, Morgan & Shonkwiler, P.C., Portland. On the reply brief was Terry D. Morgan, Morgan & Shonkwiler, P.C., Portland.

Carrell F. Bradley, Hillsboro, argued the cause and filed the brief for respondents.

Kevin L. Hanway, Portland, filed a brief amicus curiae, for Home Builders Association of Metropolitan Portland and Oregon State Home Builders Association.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

ROBERTS, J. Pro Tempore.*

---

*Appointed to Supreme Court February 8, 1982.

**ROBERTS, J.** Pro Tempore.

Plaintiffs appeal the dismissal of their complaint, by which they sought damages for inverse condemnation and violations of 42 USC § 1983 and 1985(3). We find that plaintiffs' complaint fails to state a cause of action and affirm the dismissal.

Plaintiffs own a parcel of land in the City of Beaverton (city) consisting of 9.4 acres.[1] The parcel was designated in 1960 as low density residential. In 1966, plaintiffs sought a zone change in order to develop an apartment complex on the property. The zone change was denied, but the application was remanded to the Planning Commission for reconsideration as a planned residential development. In 1971, plaintiffs were informed that they would have to submit a new development proposal for the property. Such a proposal was never submitted.

While this application procedure was going on, defendant Tualatin Hills Park and Recreation District (district) advised the city that the property was desired for use as a park. The district entered into negotiations with plaintiffs; several offers were made which plaintiffs rejected as substantially below the fair market value of the property for residential use. In 1972, the city adopted a comprehensive plan which designated the eastern two-thirds of plaintiffs' property as a park site, leaving the remaining one-third as low density residential. The plan directed that the district and the city should initiate a regular program for the acquisition and development of parks. The zoning of plaintiffs' property was never changed. In April, 1976, the district informed plaintiffs that another site had been selected for park use.

In 1977, plaintiffs sought rezoning of their property from low density to medium density residential. The city indicated that a plan amendment would be required for such a rezoning. By November, 1978, the district recommended that the park designation be removed from plaintiffs' property in the comprehensive plan. In April, 1979, the park designation was removed, but plaintiffs' application to increase the allowable densities was denied.

---

[1] The facts are as alleged in plaintiffs' complaint.

■ Plaintiffs allege that defendants conspired to acquire a park site without exercising their condemnation authority by placing a cloud of condemnation over plaintiffs' property in order to acquire the property at less than its fair market value. They further allege:

"Until 1977, the Plaintiffs were induced by Defendants to believe and reasonably believed that their property would be acquired by Tualatin Hills as a city park for its fair market value based on its use for multifamily dwellings. Plaintiffs were further induced to grant the City of Beaverton * * * easements and to refrain from submission of further development applications on the subject property and acted reasonably in reliance upon Defendants' representations in so doing."

The facts presented are similar to those presented in *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), in which a portion of the plaintiff's land was redesignated after having been designated a district shopping center. Part of the plaintiff's property was designated commercial and residential and part as greenway and transit station. The plaintiff sought damages for inverse condemnation. A demurrer to the complaint was sustained. The court held that as to the portion of the property zoned for commercial and residential use the complaint itself showed that the plaintiff was not deprived of all substantial use and benefit of the property, and the demurrer was properly sustained. 282 Or at 609. We hold similarly as to the portion of plaintiffs' property which retained a residential designation.

As to the portion of the property designated for greenway and transit station, the court in *Fifth Avenue* found that it was faced with the question of whether the designation of the plaintiff's property in Washington County's comprehensive plan for eventual public use constituted a "taking" under Article I, § 18 of the Oregon Constitution, which states that "private property shall not be taken for public use * * * without just compensation."

The court reviewed the distinction between regulation of land use under the police powers of the state and "taking" under the eminent domain power. It distinguished cases from other states which held there was no taking by the mere designation in a plan, because the plans were

characterized as " 'merely tentative and subject to change.' " 282 Or at 611. The court pointed out that *Baker v. City of Milwaukie,* 271 Or 500, 513-14, 533 P2d 772 (1975), characterized comprehensive plans in this state as "permanent in nature." The court went on to note, however, that

> "*Baker v. City of Milwaukie, [supra],* established that, by virtue of ORS 197.175(2), the intensity of private land use or development contemplated in a comprehensive plan cannot be exceeded by a zoning ordinance. More intensive private development than that allowed by the plan is not likely to be reversible in favor of less intensive private use. The same is not necessarily true with respect to eventual public acquisition of land tentatively designated as a site of a future public facility. There the question of the interim use of the land involves the eventual cost of the planned public use rather than its entire preclusion by allowing a present private use. Thus, until the landowner has explored what economically feasible private uses the city or county will permit pending the eventual taking for public use, its claim of inverse condemnation is premature." 282 Or at 611-12, n 15.

The court concluded that

> "* * * even if planning of zoning designates land for a public use and thereby effects some diminution in value of his land, the owner is not entitled to compensation for inverse condemnation unless: (1) he is precluded from all economically feasible private uses pending eventual taking for public use; or (2) the designation results in such governmental intrusion as to inflict virtually irreversible damage." 282 Or at 614 (footnote omitted).

There is no allegation here of the type of governmental intrusion, in trespass or nuisance, referred to in the second element stated in *Baker.*[2] *See Fifth Avenue Corp. v.*

---

[2] Plaintiffs rely on *Lincoln Loan v. State Hwy. Comm.,* 274 Or 49, 545 P2d 105 (1976), for recovery based on a "cloud of condemnation" resulting from defendants' actions. *Lincoln Loan,* however, while it did recognize that actual trespass is not necessary for inverse condemnation, went no further than *Thornburg v. Port of Portland,* 233 Or 178, 192, 376 P2d 100 (1963), in allowing recovery for "repeated nontrespassory invasions called 'nuisance'." The court in *Lincoln Loan* indicated only that it need not decide whether the defendant's actions were trespass or nuisance or a combination of the two. It did not extend recovery for inverse condemnation beyond those types of governmental intrusions. The negotiations between the district and plaintiffs over purchase of plaintiffs' land, even in conjunction with the city's plan designation, are not the type of actions which resulted in liability in *Lincoln Loan.*

*Washington Co., supra,* 282 Or at 614 n 17. Nor is there any indication that plaintiffs were precluded from any economically feasible private use pending the planned taking for public use.

Plaintiffs seem to believe that the allegation that they were induced to believe that the property would be acquired by defendants at its fair market value and were further induced to grant the city easements and refrain from submission of further development applications is sufficient to satisfy the requirement that they were precluded from any economically feasible use of the property. The property was designated for park use in 1972; by April, 1976, plaintiffs had been informed that it would not be acquired for such use. The only representations which may be inferred from the complaint are representations that the property would be acquired by defendants for park use and that plaintiffs would be paid the fair market value of the property. This is no more that could be inferred from the designation of the property for park use in the comprehensive plan. In addition plaintiffs alleged that they were led to believe that the acquisition was to be based on the property's fair market value as determined by its use for multifamily dwellings. Nothing in the complaint suggests that plaintiffs were precluded from all economically feasible interim uses of the property, or that they had explored with defendants the possibility of such uses.

Plaintiffs further argue that pursuit of changes in designation or submission of a development plan would have been futile. They did not allege facts which would establish what they now argue. Finally, plaintiffs suggest we "reconsider" *Fifth Avenue.* That suggestion should be addressed to the Supreme Court.

Plaintiffs contend that in effect they were held to an exhaustion of remedies requirement, and that that is not and should not be a prerequisite to bringing an action for inverse condemnation. It is not necessary to characterize the requirement stated in *Fifth Avenue* as one of exhaustion. However, the suggestion that an action for inverse condemnation is premature until allowable uses pending the taking are explored seems to tie in with the requirement that the landowner be precluded from all interim

uses. The element might well be characterized as a type of exhaustion of remedies requirement. In any event, plaintiffs' complaint does not allege facts which would establish either of the requirements set out in *Fifth Avenue,* and the motion to dismiss for failure to state a cause of action was properly granted as to the inverse condemnation cause of action.

■      Plaintiffs' two remaining causes of action, for violation of 42 USC § 1983 and 1985(3), are characterized by plaintiffs as derivative of the action for inverse condemnation. The only factual allegations are those incorporated from the inverse condemnation counts. Without a "taking" by defendants, plaintiffs' remaining two causes of action, which are predicated upon a violation of plaintiffs' rights, must fail as well.

Affirmed.