Argued and submitted September 9, 1985, affirmed January 29, reconsideration denied March 14, petition for review denied April 15, 1986 (300 Or 722)

## SUESS BUILDERS COMPANY et al,
*Appellants,*

*v.*

## CITY OF BEAVERTON et al,
*Respondents.*

(40-569; CA A32936)

714 P2d 229

Terry D. Morgan, Portland, argued the cause and filed the briefs for appellants.

Carrell F. Bradley, Hillsboro, and Lawrence Derr, Portland, argued the cause for respondents. With them on the brief were Schwenn, Bradley & Batchelor, Hillsboro, and Weiss, DesCamp, Botteri & Huber, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs appeal an adverse judgment on their inverse condemnation and 42 USC § 1983 (1982) claims. The claim for inverse condemnation seeks just compensation for property that allegedly has been taken in fact for public use and is based on the Oregon Constitution, Article I, section 18, and the Fifth Amendment, made applicable to the states through the Fourteenth Amendment.[1] The claim under 42 USC § 1983 (1982) incorporates the factual allegations of the inverse condemnation claim and seeks damages for deprivation of property rights protected by the federal constitution.[2] Plaintiffs' taking claim under Article I, section 18, was tried first, and the jury returned a verdict for defendants. The trial court then granted defendants' motion for a directed verdict on plaintiffs' federal claims.

This action has been on appeal once before. *Suess Builders v. City of Beaverton*, 56 Or App 573, 642 P2d 361 (1982), *rev'd* 294 Or 254, 656 P2d 306 (1982)(Suess I). The primary issues in this appeal concern whether the case was tried in accordance with those previous appellate decisions. We hold that it was and affirm.

We restate the facts from this court's previous decision.

---

[1] Oregon Constitution, Article I, section 18, provides:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered * * *."

United States Constitution, Amendment V:

"No person shall * * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

United States Constitution, Amendment XIV, § 1:

"* * * No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

[2] 42 USC § 1983 (1982):

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

"Plaintiffs own a parcel of land in the City of Beaverton (city) consisting of 9.4 acres. * * * The parcel was designated in 1960 as low density residential. In 1966, plaintiffs sought a zone change in order to develop an apartment complex on the property. The zone change was denied, but the application was remanded to the Planning Commission for reconsideration as a planned residential development. In 1971, plaintiffs were informed that they would have to submit a new development proposal for the property. Such a proposal was never submitted.

"While this application procedure was going on, defendant Tualatin Hills Park and Recreation District (district) advised the city that the property was desired for use as a park. The district entered into negotiations with plaintiffs; several offers were made which plaintiffs rejected as substantially below the fair market value of the property for residential use. In 1972, the city adopted a comprehensive plan which designated the eastern two-thirds of plaintiffs' property as a park site, leaving the remaining one-third as low density residential. The plan directed that the district and the city should initiate a regular program for the acquisition and development of parks. The zoning of plaintiffs' property was never changed. In April, 1976, the district informed plaintiffs that another site had been selected for park use.

"In 1977, plaintiffs sought rezoning of their property from low density to medium density residential. The city indicated that a plan amendment would be required for such a rezoning. By November, 1978, the district recommended that the park designation be removed from plaintiffs' property in the comprehensive plan. In April, 1979, the park designation was removed, but plaintiffs' application to increase the allowable densities was denied." *Suess Builders v. City of Beaverton, supra,* 56 Or App at 575. (footnote omitted).

■ The first twelve assignments of error present the initial issue: Was it error for the court to exclude evidence which is claimed to prove that defendants abused their condemnation authority? We will assume that such evidence is relevant to a theory of taking based on governmental intrusion in trespass or nuisance which substantially interferes with a landowner's property rights, as plaintiffs contend. *See, e.g., Thompson v. Tualatin Hills Park & Rec.,* 496 F Supp 530 (D Or 1980). The initial issue is resolved by reviewing plaintiffs' first appeal.

In the first appeal this court affirmed the trial court's judgment dismissing plaintiffs' second amended complaint for failure to state a claim. *Suess Builders v. City of Beaverton, supra.* Relying on *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), we held that plaintiffs failed to allege the type of governmental intrusion, in trespass or nuisance, which would constitute a taking if proved. 56 Or App at 577. We also held that plaintiffs had failed to allege that they were precluded from all economically feasible private use pending the planned acquisition for public use, which would also constitute a taking if proved. 56 Or App at 578. That holding was based on the rule in *Fifth Avenue* that a land owner seeking to establish a taking cannot rely on the apparent preclusive effect of a comprehensive plan but must show that it used administrative procedures by which it might get the plan amended or obtain partial relief through an interim use. *Fifth Avenue Corp. v. Washington Co., supra,* 282 Or at 614. We noted plaintiffs' allegations that they were induced by defendants to believe that the property would be acquired at its fair market value and as a result granted the city easements and refrained from further development applications. However, we did not consider those allegations sufficient to establish that plaintiffs were precluded from all economically feasible uses of the property.

■ On review, the Supreme Court disagreed with us in one respect and reversed and remanded. It held that there were allegations which, if proven, would support a finding that defendants had induced plaintiffs to forego exhaustion of their administrative remedies to obtain an economically feasible use of their property and that they were therefore excused from attempting to do so. The court stated:

"The * * * allegations do not set forth in detail how the governmental bodies 'induced' plaintiffs to forego further attempts to develop their property. These allegations may refer only to plaintiffs' applications for multi-family residential development, which would require zone changes quite apart from the park designation, or they may refer to 'inducing' plaintiffs to abandon any development whatever because of defendants' determination to acquire the land. *The language is broad enough to encompass a hypothetical claim that defendants told plaintiffs that the property was certain to be acquired, that it would be useless to pursue any proposals for private development, and that defendants began to acquire*

*easements for certain facilities.* If that were the case, and defendants later abandoned their plans, a court could find that one or perhaps both of the governmental bodies had temporarily taken all economic use of plaintiffs' property. * * *" 294 Or at 263. (Emphasis supplied).

The Supreme Court concluded that plaintiffs had sufficiently alleged one theory of inverse condemnation, that they were induced to believe that they were precluded from all economically feasible private use pending the planned acquisition for public use. The Supreme Court did not, however, overrule our express holding that plaintiffs had failed to allege the type of governmental intrusion in trespass or nuisance from which a taking could be found. Evidence concerning abuse of condemnation authority may be relevant to that latter theory. *Thompson v. Tualatin Hills Park & Rec., supra,* 496 F Supp at 543-44. However, it is irrelevant to the temporary taking claim which the Supreme Court held that plaintiffs had sufficiently alleged.[3] Accordingly, the court did not err in excluding evidence claimed to prove abuse of the condemnation authority.

The second issue is whether the court erred in giving the following instruction:

"In order to show that his property has been taken as a result of planning or zoning action, a property owner must show that he has used all available administrative remedies by which he might at least temporarily or partially gain the ability to make an economically feasible use of the property. Administrative remedies means procedures available which plaintiffs could have used to submit development plans under existing zoning or to change applicable land use regulations to permit a use plaintiffs desire to make of their property."

Plaintiffs dispute the part of the instruction which reads: "Administrative remedies means procedures available which plaintiffs could have used to submit development plans under existing zoning * * *." They argue that the language implies that they could have developed their land under the existing zoning ordinance, which provided for low density residential,

---

[3] On remand the pleadings were not amended. Plaintiffs assign as error the trial court's refusal to permit them to amend the pleadings well into trial. It was not an abuse of discretion for the trial court to refuse the motion. *Gibson Bowles, Inc. v. Montgomery,* 51 Or App 313, 319, 625 P2d 670 (1981).

even though two-thirds of their land was designated on the plan map as a public park, and that implication is inconsistent with the rule that zoning or other land use decisions must be consistent with the comprehensive plan. *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 722 (1975).

Defendants argue that the instruction was consistent with the *Baker* rule, because the plan itself permits private uses under existing zoning ordinances, even though the plan map designates a public use. They rely on the following language from the text of the plan and the back of the plan map:

> "The general plan is not a zoning plan and no existing zoning rights are changed by the plan. However, zoning is one of the important legislative tools available to implement the plan * * *. All zoning changes shall be considered in relation to the general plan and this serves as one of the continuing means of evaluating the plan. If zone changes are contemplated which are contrary to the plan, the community should first amend the policies and concepts in the plan before a change of zone is made."

Plaintiffs reply that defendants' interpretation of the plan renders it merely advisory, which is impermissible under *Baker.*

We need not address that argument. In the context of a taking claim, a landowner cannot assert that a comprehensive plan precludes him from developing his property under existing zoning ordinances, if the governing body has interpreted the plan to allow such development, until the landowner has submitted development plans under the existing ordinance and the governing body has acted unfavorably on them. *Fifth Avenue Corp. v. Washington Co., supra,* 282 Or at 622-23 n 23; *Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976). In *Hayward,* the Supreme Court stated:

> "* * * The appropriate place for both an initial interpretation of a comprehensive plan and a determination whether a proposed change complies with the specifics of the plan as properly interpreted is at the local level where the governing body is familiar with the plan and its implementation, and has heard the evidence at first hand. * * *" 275 Or at 706.

The court's instruction was not erroneous.[4]

■   The next issue is whether the instruction, which presented the issue of inducement to the jury, was erroneous. It provided:

> "Plaintiffs may avoid the burden of showing that they have attempted to use all administrative procedures if they show that one or both of the defendants: (1) told them that their property was certain to be acquired, (2) that it would be useless to pursue any proposals for private development, and that the defendants began to acquire easements for park purposes, but later abandoned their plans."

Plaintiffs contend that the instruction fails to set forth the proper legal standard for inducement. They offered the following language, stating "objective standards":

> "In order to prove inducement, Plaintiffs must show that the actions of the Defendants, either individually or in conjunction, would have prevented a reasonable person under the circumstances from using the city's procedures to develop the property or change the land use regulations restricting the use of the property."

Plaintiffs' inducement allegations assert that defendants actually induced them to forgo submitting development plans and do not raise the question whether, given defendants' actions, a reasonable person would have foregone development plans. The issue raised by the pleadings was accurately presented to the jury by the court's instruction, which, in any event, was more favorable to the plaintiffs than the one they requested, because it did not subject their conduct to scrutiny for reasonableness.

Plaintiffs next contend that the court erred in directing a verdict for defendants on the federal taking claim. After the jury returned a verdict for defendants on plaintiffs' taking claim under Article I, section 18, the court granted defendants' motion for a directed verdict on their federal taking claim and 42 USC § 1983 (1982) claims, reasoning that there were no distinctions between state and federal law which would justify a different conclusion under the federal claims.

---

[4] In view of our holding that the court's instruction was correct, we do not address the claim of error concerning the trial court's failure to give another instruction on the same subject.

■    Plaintiffs argue that the court erred, because there are different standards for a taking under the state and federal constitutions. They rely on *Suess I,* where the court stated:

"Although the basic thrust of the fifth amendment and art I, § 18, is generally the same * * * the criteria of compensable 'taking for public use' under art I, § 18, are not necessarily identical to those pronounced from time to time by the United States Supreme Court under the fifth amendment. For instance, plaintiffs refer to the phrase 'investment-backed expectations' [as used by the United States Supreme Court], but this court has not mentioned such an element in cases under art I, § 18. * * *" 294 Or at 259 n 5.

Plaintiffs misunderstand the quoted footnote. The court reaffirmed the importance of distinguishing claims under the state and federal constitutions even when, as here, the "basic thrust" of the provisions at issue are the same. To support that proposition, it then gave the example of "investment-backed expectations" which the United States Supreme Court has mentioned as an element to be considered in certain Fifth Amendment taking claims but which the Oregon Supreme Court has not mentioned as an element of a taking claim under Article I, section 18. The court made clear, however, that the element of "investment-backed expectations" had no bearing on the case, because the plaintiffs did not allege that the defendants had required them to use their land in a certain way; they alleged only that the defendants took their land in fact. The Supreme Court continued at footnote 5.

"There is no occasion here to enter upon such arguments [relating to investment-backed expectations], because it is not claimed, that defendants demanded any kind of use of plaintiffs' land beyond designating it for eventual acquisition for a park." 294 Or at 259 n 5.[5]

As stated, the pleadings here are the same as before. Thus, there is no occasion to consider the issue of "investment-backed expectations." The one theory of taking that

_____

[5] In *Williamson Co. Regional Planning v. Hamilton Bank,* 473 US ____, 105 S Ct 3108, 87 L Ed 2d 126 (1985), the United States Supreme Court also recognized the distinction between a theory of taking premised on governmental preclusion of all economically feasible use of the property and a theory of taking premised on governmental interference with investment-backed expectations. 473 US at ____ (87 L Ed 2d at 142 n 12).

plaintiffs adequately alleged is substantively the same whether it is premised on Article I, section 18, or the Fifth Amendment. Therefore, the court did not err in directing a verdict for defendants on plaintiffs' federal taking claim.

■ 42 USC § 1983 (1982) provides a means for civil redress of a violation of federal rights. It does not create those substantive rights. Thus, when the question whether there has been a taking of plaintiffs' land is resolved negatively under Article 1, section 18, and when it is determined that the same criteria resolve the taking claim under the Fifth Amendment, the possibility of any claim under 42 USC § 1983 (1982) is eliminated. Therefore, the court did not err in directing a verdict on plaintiffs' claim under 42 USC § 1983 (1982).

Affirmed.[6]

---

[6] We have considered plaintiffs' remaining assignments of error and hold that they are without merit and warrant no discussion.