Argued and submitted April 16, judgment reversed in part and remanded; otherwise affirmed December 22, 1993

STATE ex rel Michael D. SCHRUNK,
District Attorney for Multnomah County;
and the City of Portland,
a political subdivision of the State of Oregon,
*Respondents,*

*v.*

Pete Johannes METZ;
John Merrill Pietila; Phillip Mindel;
Kimberly Gail Bullock; Robert Leon Olson;
Michael Kolin; Barry Kolin;
Barry Kolin dba Harvey's Restaurant and Lounge;
and The Personal Property Listed in Exhibit A and
the Real and Personal Property Listed in Exhibit B,
*Defendants,*

*and*

Rene Duane VARIN;
Tony's Northwest, Inc.;
and R's Hollywood Club, Inc.,
*Appellants.*

(A9003-01559; CA A70486)

867 P2d 503

Michael H. Bloom argued the cause and filed the briefs for appellants.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent State of Oregon. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Amy Holmes Hehn, Deputy District Attorney, argued the cause and filed the brief for respondent City of Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

■ The issue in this appeal is the legality of the seizure for forfeiture of the corporate assets of Rene Duane Varin's (claimant) two restaurants[1] pursuant to Oregon Laws 1989, chapter 791,[2] and Portland City Code (PCC) 14.90.040.[3] At the forfeiture proceeding, claimant asserted by counterclaim that: (1) the seizure and retention of the corporate property rendered the state and the City of Portland (plaintiffs) liable in tort for conversion; (2) the seizure and retention of the property constituted an impermissible "taking" of property in violation of Article I, section 18, of the Oregon Constitution and the Fifth Amendment to the United States Constitution; and (3) the procedural safeguards afforded by Oregon Laws 1989, chapter 791, fail to satisfy the minimum requirements of due process. The trial court granted summary judgment for plaintiffs on each of

---

[1] The two restaurants, R's Hollywood Club, Inc. and Tony's Northwest, Inc., were named as defendants on the forfeiture claim, because a forfeiture action is an action against property, not persons. Or Laws 1989, ch 791, § 3.

[2] Oregon Laws 1989, chapter 791, has not yet been codified in Oregon Revised Statutes. It appears as a note preceding ORS 166.005, and stands to be repealed on December 31, 1993.

[3] Oregon Laws 1989, chapter 791, authorizes the forfeiture of real and personal property "which is used, or intended to be used, in any manner or part, to commit or facilitate in any manner the commission of prohibited conduct." Or Laws 1989, ch 791, § 3(7). *See also State v. 132.85 Acres,* 114 Or App 339, 341 n 2, 834 P2d 526 (1992). "Prohibited conduct" is conduct proscribed by ORS chapter 475, the Uniform Controlled Substances Act. Or Laws 1989, ch 791, § 2(11). Section 1(4), however, expressly authorizes municipalities to pass ordinances providing for the forfeiture of property based on activity other than that defined as "prohibited conduct" in section 2(11), provided that:

"(a) The property was used to commit the conduct described in the ordinances, or is proceeds of the conduct; and

"(b) The forfeiture is subject to the procedures and limitations set forth in this Act."

PCC 14.90.040 and PCC 14.90.020 were enacted pursuant to section 1(4). PCC 14.90.040 provides:

"Conduct involving violation of, solicitation to violate, attempt to violate or conspiracy to violate any provision of ORS 167.117 to 167.162 [proscribing unlawful gambling activities] is hereby declared to be prohibited conduct, and any property that is used to commit or which is proceeds of the prohibited conduct is hereby subject to forfeiture, as limited by the provisions of 14.90.020."

PCC 14.90.020 states:

"All forfeiture proceedings pursuant to this Chapter shall be done in accordance with the provisions of Oregon Laws, Chapter 791 (1989)."

the counterclaims. Claimant appeals. We affirm in part, reverse in part and remand.

We review the motion for summary judgment on each counterclaim to determine whether plaintiffs demonstrated that they were entitled to judgment as a matter of law. *Oregon Mutual Ins. Co. v. Clemens,* 124 Or App 155, 157, 861 P2d 372 (1993); *Aylett v. Universal Frozen Foods Co.,* 124 Or App 146, 148, 861 P2d 375 (1993).

This case arises from a Portland Police Bureau investigation into unlawful gambling activities being conducted in certain Portland area restaurants. The investigation culminated in the indictment of several persons, including claimant, on numerous counts of racketeering and gambling. In accordance with Oregon Laws 1989, chapter 791, section 4(4)(a) and (b),[4] the city obtained an *ex parte* judicial order directing Portland police officers to seize, for forfeiture, the corporate assets of claimant's restaurants and certain items of claimant's personal property. The order was executed on March 2, 1990. Claimant filed a property claim form with the city requesting the return of all seized property. The city denied the request, retained possession of the property and refused to allow claimant access to the restaurants.

The city filed this action for civil forfeiture on March 12. Four days later, claimant filed a motion for a show cause hearing under Oregon Laws 1989, chapter 791, section 5(5), in which he sought a judicial determination as to whether there was probable cause to believe that the seized property was subject to forfeiture. That motion was denied on the ground that section 5(5) allows a show cause hearing only when property is seized without a prior judicial determination of probable

---

[4] Oregon Laws 1989, chapter 791, section 4(4) provides, in part:

"(a) Property may be seized by any police officer pursuant to an order of the court. Forfeiture counsel or a seizing agency may apply for an ex parte order directing seizure of specified property.

"(b) Application shall be made to any judge as defined in ORS 133.525. The application shall be supported by one or more affidavits setting forth the facts and circumstances tending to show where the objects of the seizure are to be found. The court shall issue the order upon a finding of probable cause to believe that the described property is subject to forfeiture. The order may be set out on the face of a search warrant."

cause and not when, as here, property is seized pursuant to court order.[5]

Because the restaurants were not open for business and were unable to generate any revenue, they fell delinquent on certain of their financial obligations and were subsequently declared to be in default. After the seizure of assets, claimant entered into agreements with the restaurants' creditors to have the city release the seized corporate assets to them. The city released the assets to the creditors and agreed not to seek forfeiture of the released assets, in exchange for the creditors' promise never knowingly to allow claimant to own, operate or have any interest in the restaurants.

After a lengthy criminal trial, claimant was acquitted of all criminal charges.[6] Thereafter, he filed an answer to plaintiffs' complaint in the forfeiture action and asserted counterclaims for conversion, inverse condemnation and a violation of his federal constitutional rights under 42 USC § 1983. After the trial court granted summary judgment for plaintiffs on each of the counterclaims, plaintiffs moved to dismiss their forfeiture action against the restaurants. The court granted the motion and claimant's personal property was returned to him.

---

[5] Oregon Laws 1989, chapter 791, section 5(5) provides, in part:

"If property is seized for forfeiture or if a notice of forfeiture is filed *without a prior judicial determination of probable cause*, a court, on application filed by an owner of or interest holder in the property within 15 days after notice of its seizure for forfeiture, or actual knowledge of it, whichever is earlier, may, after five days written notice to the forfeiture counsel, issue an order to show cause to the forfeiting agency, for a hearing on the sole issue of whether probable cause for forfeiture of the property then exists. * * *" (Emphasis supplied.)

The legislative history of Oregon Laws 1989, chapter 791, is clear that section 5(5) does not authorize a show cause hearing when there has been a prior judicial determination of probable cause. Assistant Attorney General Peter G. Shepherd, when testifying before the Civil Subcommittee of the House Judiciary Committee on February 20, 1989, said that section 5(5) "applies only if a seizure has taken place without a court order. It provides no authority for a hearing if the seizure is made pursuant to court order issued under section 4(4)."

[6] That claimant was exonerated of all criminal charges has little bearing on the legality of the seizure. A civil *in rem* forfeiture proceeding under Oregon Laws 1989, chapter 791, is an action against the property rather than its owner and, consequently, the issue of the owner's criminal culpability is immaterial. Indeed, a forfeiture action may be maintained even though criminal charges against the owner are never filed. *See* "The New Oregon Civil Forfeiture Law," 26 WLR 449, 470-71 (1990).

■ Claimant first asserts that the seizure and retention of the restaurants' assets rendered plaintiffs liable in tort for conversion. He claims that plaintiffs lacked statutory authority to seize the assets and that they failed to properly maintain and preserve the assets. Plaintiffs contend that, under Oregon Laws 1989, chapter 791, section 9(6)(a), they have complete and absolute immunity from liability for conversion. Section 9(6)(a) provides:

> "If it appears that there was reasonable suspicion that the property[7] was subject to forfeiture, the court shall cause a finding to be entered, and no claimant * * * shall be entitled to costs or damages, nor is the person who made the seizure, the seizing or forfeiting agency or forfeiture counsel liable to suit or judgment on account of such seizure or action. An order directing seizure issued under subsection ([4])[8] of section 4 of this act shall constitute a finding of reasonable suspicion that the property was subject to forfeiture."

Because the restaurants' corporate assets and items of personal property were seized pursuant to a court order issued under section 4(4), it is conclusively presumed that plaintiffs had a reasonable suspicion that the property was subject to forfeiture. Consequently, section 9(6)(a) bars claimant from recovering any costs or damages and immunizes plaintiffs from liability for the seizure. The trial court properly granted summary judgment to plaintiffs on claimant's counterclaim for conversion.

---

[7] "Property" is defined as

"any interest in anything of value, including the whole of any lot or tract of land and tangible and intangible personal property, including currency, instruments or securities or any other kind of privilege, interest, claim or right whether due or to become due." Or Laws 1989, ch 791, § 2(12).

All assets that were seized unquestionably qualify as "property" as defined in § 2(12) and as used in § 9(6)(a) and PCC 14.90.040.

[8] The version of section 9(6)(a) in effect at the time of the seizure provided that an order directing seizure "under *subsection (3)* of section 4" (emphasis supplied) constitutes a finding of reasonable suspicion that the seized property was subject to forfeiture. The reference to subsection (3), however, was a scrivener's error. The procedure for issuing a seizure order is, and always has been, contained in subsection (4). The error was apparently recognized by the 1991 Legislature, which amended section 9(6)(a) to now provide that:

"An order directing seizure issued under *subsection (4)* of section 4, chapter 791, Oregon Laws 1989, shall constitute a finding of reasonable suspicion that the property was subject to forfeiture." (Emphasis supplied.)

■    We next consider claimant's action for inverse condemnation. An inverse condemnation action, which is inextricably linked to the state's power of eminent domain, is based on Article I, section 18, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. *Willard v. City of Eugene*, 25 Or App 491, 493-94, 550 P2d 457, *rev den* (1976). Article I, section 18, provides:

> "Private property shall not be taken for public use * * * without just compensation * * *."

The Fifth Amendment states:

> "[N]or shall private property be taken for public use, without just compensation."[9]

Though the claim is constitutional in nature, the phrase "inverse condemnation" is not derived from either constitution. It is simply the popular description of a cause of action against a governmental entity to recover the value of property taken, even though no formal exercise of the power of eminent domain has been instituted. *Suess Builders v. City of Beaverton*, 294 Or 254, 258 n 3, 656 P2d 306 (1982); *Lincoln Loan v. State Hwy. Comm.*, 274 Or 49, 51 n 1, 545 P2d 105 (1976). As the Supreme Court explained in *Cereghino et al v. State Highway Com.*, 230 Or 439, 444, 370 P2d 694 (1962):

> "[W]here the state exercises its power of eminent domain without bringing an action to condemn, the owner of the property taken may himself go into court and sue to recover its value and certain damages; for to deny him this right would be to deprive him of the protection guaranteed by Article I, Section 18, of the state constitution."

Claimant maintains that the seizure of the restaurants' assets pursuant to Oregon Laws 1989, chapter 791, constituted a taking of property for which he is entitled to compensation under the state and federal constitutions. We consider the state constitutional claim first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

---

[9] Although the analysis employed under Article I, section 18, for determining whether there has been a compensable taking of property for a public use may not be identical to that used under the Fifth Amendment, the "basic thrust" of the two provisions is the same. *Suess Builders v. City of Beaverton*, 294 Or 254, 259 n 5, 656 P2d 306 (1982).

In *Hughes v. State of Oregon*, 314 Or 1, 34, 838 P2d 1018 (1992), the Supreme Court noted that a state-imposed regulation that results in an acquisition of private property does not effect a "taking" in the constitutional sense and, hence, does not require compensation, if the regulation is a valid exercise of the state's "police power." The court explained that, when properly exercised, the police power does not give rise to a constitutional claim for appropriation:

> "Not every acquisition of a private property interest by the state constitutes a taking under section 18; through the lawful exercise of other powers available to it, *e.g.*, the taxing power, *the "police power*," or the power to purchase property, the state may, consistently with constitutional requirements, acquire private property interests in a manner that does not constitute a taking. *Ordinarily, when the government acquires such an interest through a power other than its taking power, just compensation is not constitutionally required.*" 314 Or at 34. (Emphasis supplied; citations omitted.)

Oregon's civil forfeiture law, which operates to make illicit behavior unprofitable and to thwart the continued unlawful use of property, fosters the purposes served by the criminal laws and is directed primarily at the prevention of serious public harm and the preservation of the public welfare. *See* Or Laws 1989, ch 791, § 1. As such, it is a permissible police power regulation. *See Willard v. City of Eugene, supra*, 25 Or App at 495. Because the seizure and ultimate forfeiture of property under Oregon Laws 1989, chapter 791, is not accomplished by virtue of the power of eminent domain, but is instead undertaken in the exercise of the police power, any acquisition of defendants' properties that may have resulted from the court ordered seizure did not constitute a "taking" of property as contemplated by Article I, section 18. Accordingly, there was no violation of that constitutional provision.

For the same reason, there was no violation of the Fifth Amendment. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 US 663, 686, 94 S Ct 2080, 40 L Ed 2d 452 (1974); *Van Oster v. Kansas*, 272 US 465, 467, 47 S Ct 133, 71 L Ed 354 (1926).[10] The trial court did not err in entering summary

---

[10] In *Calero-Toledo*, the Court recognized that the civil forfeiture of property may give rise to a takings claim under the Fifth Amendment when property is used

judgment for plaintiffs on claimant's inverse condemnation claim.

■ Finally, we address claimant's assertions under 42 USC § 1983. That statute provides, in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

By its own terms, section 1983 is remedial only and does not grant any substantive rights. Its function is to allow an avenue for redress for persons injured by government actions that violate federal constitutional rights. *See Suess Builders Co. v. City of Beaverton*, 77 Or App 440, 449, 714 P2d 229, *rev den* 300 Or 722 (1986).

■ Because the city was acting under an established municipal policy of seizing for forfeiture property allegedly involved in illegal gambling activity, it is a "person" that can be sued under section 1983. *Haase v. City of Eugene*, 85 Or App 107, 109, 735 P2d 1258 (1987). The state, however, is not a "person" subject to liability under section 1983. *Will v. Michigan Dept. of State Police*, 491 US 58, 109 S Ct 2304, 105 L Ed 2d 45 (1989); *Anderson v. Dept. of Rev.*, 313 Or 1, 5, 828 P2d 1001 (1992). Hence, claimant's section 1983 claims are viable, if at all, only against the city.[11]

---

for illegal purposes without the owner's privity or consent, as where the property has been stolen and put to an unlawful use, or when the owner is able to prove

"not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property[.]" 416 US at 689.

Here, the record discloses that claimant maintained possession of all property until it was seized. Also, no allegation has been made or proof offered that claimant did all he reasonably could do to prevent the unlawful use of the property.

[11] We note that the city cannot use Oregon Laws 1989, chapter 791, section 9(6)(a) as a shield from liability for claimant's section 1983 claims, because conduct that is violative of section 1983 cannot be immunized by state law. *See Rogers v. Saylor*, 306 Or 267, 277-78, 760 P2d 232 (1988). The issue is simply one of state law being pre-empted as inconsistent with federal law. As the United States Supreme Court recently explained:

Claimant first contends that the seizure of the restaurants' assets resulted in an uncompensated "taking" in violation of the Fifth Amendment. For the reasons discussed in connection with his action for inverse condemnation, that claim must fail.

Claimant also invokes section 1983 in arguing that the seizure violated his constitutional right to due process of law for the deprivation of protected property interests. US Const, Amend XIV.[12] He first asserts that Oregon Laws 1989, chapter 791, fails to comply with the dictates of due process, because the statutory scheme does not contain a provision for pre-seizure notice and opportunity for an adversarial hearing. Because that argument was not raised in the trial court and therefore was not properly preserved for appeal, we do not address it. *See State v. Rodriguez*, 317 Or 27, 38 n 11, 854 P2d 399 (1993); *State v. Darlin*, 122 Or App 172, 179 n 8, 857 P2d 859 (1993).[13]

Claimant did properly preserve below, and assigns as error on appeal, his contention that due process demands a post-seizure opportunity to be heard. He asserts that, after the seizure of property pursuant to a court order, due process requires at the very least a hearing at which a claimant can challenge the *ex parte* determination of probable cause. Some federal courts have held that civil forfeiture laws that provide neither pre- nor post-seizure notice and hearing fail to meet the strictures of due process. *See Murphy v. Matheson*, 742 F2d 564, 577 (10th Cir 1984); *Weiler v. Carpenter*, 695 F2d

---

"[A] state law that immunizes government conduct otherwise subject to suit under § 1983 is pre-empted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy * * *." *Felder v. Casey*, 487 US 131, 139, 108 S Ct 2302, 101 L Ed 2d 123 (1988).

*See also Owen v. City of Independence*, 445 US 622, 647 n 30, 100 S Ct 1398, 63 L Ed 2d 673 (1980).

[12] The Due Process Clause requires that the state provide "due process of law" when it deprives a person of "life, liberty, or property * * *." US Const, Amend XIV.

[13] We note that, since this case was submitted, the United States Supreme Court has addressed the issue of whether due process requires that pre-seizure notice and an adversarial hearing be afforded to an owner of real property in a civil forfeiture proceeding. *United States v. James Daniel Good Real Property et al*, WL 50539, ____ US ____, 114 S Ct 492, 126 L Ed 2d 490 (1993). We reiterate that claimant did not properly preserve that issue for review.

1348, 1350 (10th Cir 1982); *Franza v. Carey*, 518 F Supp 324, 344 (SDNY 1981); *but see United States v. One BMW 4-Door Sedan*, 652 F2d 817, 821 (9th Cir 1981) (noting that due process "requires no more than that forfeiture proceedings be commenced without unreasonable delay"). However, there is no bright line rule that establishes when due process is or is not satisfied. Determining what process is constitutionally due in a certain context necessarily involves a probing examination of the specific facts involved. As the United States Supreme Court has explained, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," *Cafeteria Workers v. McElroy*, 367 US 886, 895, 81 S Ct 1743, 6 L Ed 2d 1230 (1961), but, rather, is a fluid concept that generally requires that an individual be afforded the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manza*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965). The exact process due in a given situation is shaped by balancing

> "the private interest that will be affected by the official action; * * * the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976).

Here, the private interest at stake is the ownership and possession of commercial properties. It is well recognized that commercial interests are not accorded the strict constitutional protection accorded to residential interests. *United States v. 141st Street Corp.*, 911 F2d 870, 875 (2nd Cir 1990); *U.S. v. Two Parcels of Property*, 774 F Supp 87, 89 (D Conn 1991); *U.S. v. Certain Real Property on Hanson Brook*, 770 F Supp 722, 729 (D Me 1991). Nonetheless, there is no question that claimant had a protected interest in the seized property that is "not rendered insignificant merely because the subject property is commercial rather than residential." *U.S. v. Two Parcels of Property, supra*, 774 F Supp at 89.

■ We next consider the risk of an erroneous deprivation under the current procedure and the probable value of additional safeguards. As mentioned, Oregon Laws 1989, chapter

791, does not specifically provide a hearing to contest the merits of the government's case on forfeiture either before or after allegedly illicit assets are seized. Thus, a claimant who wishes to challenge the probable cause basis of a seizure order issued under section 4(4) must wait until the forfeiture proceeding itself. The perceived problem with such a procedure is that there is usually a rather lengthy delay between the seizure of property and the forfeiture proceeding. *See United States v. 37 Photographs*, 402 US 363, 371-72, 91 S Ct 1400, 28 L Ed 2d 822 (1971); *Lee v. Thornton*, 538 F2d 27, 32 (2nd Cir 1976). Indeed, no adversarial hearing was held in this case until approximately 14 months after the property was seized. In such circumstances, the forfeiture proceeding cannot be viewed as a hearing that is provided "at a meaningful time."

■■■■ Although the pre-seizure *ex parte* probable cause hearing before a judicial officer reduces somewhat the risk of an erroneous deprivation, the seizure order nonetheless emerges from a non-adversarial process. Allowing for a prompt post-seizure hearing in which a claimant may contest the validity of the seizure order would unquestionably minimize the risk of error and help ensure that the affidavit submitted in support of the order has an appropriate factual foundation. As the United States Supreme Court recently observed:

" '[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights * * *. [And n]o better instrument has been devised for arriving at the truth than to give a person in jeopardy of serious loss notice of the case against him and an opportunity to meet it.' " *Connecticut v. Doehr*, 501 US 1, 111 S Ct 2105, 2114, 115 L Ed 2d 1 (1991), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 US 123, 170-72, 71 S Ct 624, 95 L Ed 817 (1951) (Frankfurter, J., concurring). (Citations omitted; brackets in original.)

Finally, we note that the city has important interests in stopping the use of seized property for criminal purposes, in preventing the profitability of criminal enterprises, in seeking retribution for society, and in providing compensation for its law enforcement services. However, no reason appears why the city would be overly burdened or any public interest disserved by providing an immediate post-seizure

probable cause hearing. Indeed, the burdens of providing such a hearing would be minimal, as the machinery is readily available and is already used when property is seized without a court order. *See* Or Laws 1989, ch 791, § 5(5).

We conclude that the due process balance manifestly tilts in favor of a prompt post-seizure hearing. We therefore hold that, to the extent that Oregon Laws 1989, chapter 791, authorizes the seizure of property pursuant to an *ex parte* court order without any post-deprivation probable cause hearing other than the forfeiture trial, it violates due process, and, as applied to claimant, it violated his Fourteenth Amendment right to procedural due process.

Judgment on claim under 42 USC § 1983 reversed and remanded; otherwise affirmed.